THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY FOSTER, Defendant-Appellant.

(No. 73-252; )

Third District—October 11, 1974.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Richard Orloff, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Respondent, LeRoy Foster, appeals from an order of the Circuit Court of Will County by which he was adjudged to be a sexually dangerous person and which order directed his remandment to the custody of the Department of Corrections. On appeal there is no attack on the findings of the court but the contention made by the respondent is that the court lacked jurisdiction and that the governing statute (Ill. Rev. Stat. 1971, ch. 108, § 112—since repealed) was unconstitutional.

From the record it appears that Foster was convicted in 1958 on two counts of rape and sentenced to 25 years in the penitentiary. As a result of new "good time" rules he was scheduled for discharge on April 3, 1972. Testimony of prison officials at the hearing conducted in the circuit court indicated that under normal and customary procedures, inmates were released at about 11 A.M. or 11:30 A.M. on the date of their proposed discharge. The supervisor testified that he was certain that such procedures were followed at the time respondent was to be released.

It appears that at 4:20 P.M. a petition was filed in the circuit court in Joliet alleg'ng that respondent was a sexually dangerous person and should be kept in the custody of the Department of Corrections until such time as his condition had subsided. The provision for such petition and procedures which followed were section 8 of "An Act in relation to the Illinois State Penitent'ary" (Ill. Rev. Stat. 1971, ch. 108, § 112), which was later repealed by enactment of the Un'fied Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1001 et seq.). Respondent was retained at the prison past the 11 or 11:30 A.M. time until around 5 P.M. He was told that he was required to appear in court on Apr'l 5, 2 days later. Respondent had planned to return home to Chicago but dec'ded to stay in Joliet until the court date. He signed a waiver form allow'ng prison officials to keep him incarcerated for another 2 days. On April 5, 1972, respondent appeared in court and was served with a copy of the petition. Thereafter, he was examined by three court-appo'nted psychiatrists during a cont'nued period of incarceration. On June 2, 1972, following a hearing, the trial court found him to be sexually dangerous and remanded him to the custody of the Department of Corrections.

■■ On appeal in this court, respondent first contends that the trial court lacks jurisdiction to hear the case, contending that the petition was not filed until after the "scheduled time" for his release. We do not agree with that contention. There was no showing that a prisoner is required to be released at any particular time during the day fixed for his release. The statute governing the problems of convicts serving time for sexual crimes, who are nearing the end of their sentences, but appear to be suffering from some type of mental deficiency, are noted in section 8 of the Act. The portion which is relevant to the first issue before us provides: "Before any convict * * * is released upon the expiration of his sentence, the Department of Corrections may file with the Circuit Court * * * a petition in writing setting forth facts tending to show the convict is * * * a sexually dangerous person." The petition filed under this section was then required to be filed before a convict is released at the end of his sentence. Foster argues in this court that he was "released" at about 11 A.M. or 11:30 A.M. and that the filing of the

petition at 4:20 P.M. was too late. While the court should not condone unreasonable detention of persons past the time when they can be legally held by the authorities, there is nothing in the record to indicate that respondent or any inmate has any right to be released at a particular time on a scheduled day of discharge, or that the prison officials have a corresponding duty to release inmates at a certain time of day.

The Stateville officials were not bound to release Foster at any particular time on April 3, 1972. Foster was free to leave at 5 P.M. that day and his decision to stay in the prison for 2 more days was presumably for his own convenience. The delay was reasonable and Foster voluntarily decided to remain for the 2-day period until April 5 as we have indicated. The filing of the petition at 4:20 P.M. on the day of respondent's release was also timely, since Foster had not in fact been released and the trial court had jurisdiction in the case. See *People ex rel. Smith v. Jackson*, 37 Ill.2d 379, 227 N.E.2d 366 (1967).

██ The second contention made by Foster is that section 8 of the Act was unconstitutional in that it denied him equal protection of the laws by providing different treatment and procedures for sexually dangerous inmates than for other classes of mentally deficient inmates that fall under the Act. The Act recognizes four classes of inmates, all of whom must have been convicted for sex crimes: (1) those mentally ill; (2) those in need of mental treatment; (3) those mentally deficient with continuing criminal propensities; and (4) those sexually dangerous. A "sexually dangerous" inmate is described as "any person not mentally ill or retarded, suffering from a mental disorder coupled with criminal propensities to the commission of sex offenses, and who has demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children." That condition must be found to have existed for a year prior to the filing of the petition under the Act. The Act does not provide definitions for the other classes, however, nor does it provide for any minimum time limit for the existence of conditions as to such classes, which, if discriminatory, is in favor of sexually dangerous persons.

By the terms of the Act, inmates examined and found to be in one of the first three classes are to be committed to the Department of Mental Health upon the expiration of their sentences and thereafter fall under the provisions of the Mental Health Code (Ill. Rev. Stat. 1971, ch. 91½). Those found in the fourth class, sexually dangerous persons, however, are recommitted to the Department of Corrections. Respondent argues that this difference in treatment is without a rational basis and is grounded on an arbitrary classification. While it is difficult for us to determine the difference, if any, among the four classes and possible justification for distinct treatment accorded to the sexually dangerous inmate,

as opposed to other classes, and while the lack of statutory definitions for the other three classes does not help the analysis, we can discern a basis for classification which seems to have a rational foundation.

 While the General Assembly may not legislate treatment simply by classifying, or arbitrarily discriminate against one in favor of another similarly situated, the applicable rule recently stated by the United States Supreme Court in *Reed v. Reed*, 404 U.S. 71, 75-76, 30 L.Ed.2d 225, 229, 92 S.Ct. 251 (1971), is as follows:

> "* * * this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. * * * The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

With the principles recited in *Reed v. Reed*, 404 U.S. 71, 30 L.Ed.2d 225, 92 S.Ct. 251 (1971) in mind, we look first to the nature of the classifications. We note that those in the first three classes (the mentally ill, those in need of mental treatment, or those mentally deficient with criminal propensities) are treated together throughout the statute. Those in the fourth class, the sexually dangerous, are given a separate consideration in the areas of the Act now before us. As respondent points out, a rapist-murderer with continuing propensities to kill would fall under the third class and be committed to the Department of Mental Health for treatment under the Mental Health Code. A rapist considered sexually dangerous is meanwhile remanded to the custody of the Department of Corrections. A basis for varying the dispositions in their cases is suggested by the State, and may be gleaned from the reports of the three examining psychiatrists in the instant case. All three determined that Foster was mentally disturbed but not in need of mental treatment, but that he needed institutional care and treatment provided by the Psychiatric Division of the Department of Corrections. The State thus argues that the legislature felt persons in the first three classes could benefit from a mental health program under the Department of Mental Health, while persons considered sexually dangerous could not. While the doctors' reports are not conclusive, they do show an apparent medical basis for such a legislative classification. On the basis of our analysis, we do not believe there is a violation of equal protection as to sexually danger-

ous persons arising from the classification in the Act under consideration.

■■ While respondent notes the "advantages" of treatment under the Mental Health Code he does not elaborate on what these advantages might be or how such treatment is significantly different from that received in the Department of Corrections. Certainly, it is apparent that the sexually dangerous inmate, like the inmates in the other three classes, is recommitted only after a judicial hearing with a right to a jury and counsel. Secondly, he is committed not to the normal pen'tentiary facilities along with other convicts, but to a facility under the Psychiatric Division especially reserved for the care and treatment of sexually dangerous persons. Additionally, he may at any time petition for his release on grounds of recovery and receive a further hearing on that question. The Department itself may also initiate such proceedings. Finally, these guarantees will be judicially enforced. (See *People v. Shiro*, 52 Ill.2d 279, 283 (1972).) We conclude, therefore, that despite the variation in classification, there appears to be no significant difference in the treatments accorded to inmates in the first three classes and those in the fourth class. There is no d'fferent treatment, based on criteria unrelated to the purposes of the Act (to paraphrase the *Reed v. Reed* opinion), and, therefore, we conclude that there is no denial of equal protection in the dispositions provided for in the Act.

■■ The remaining equal protection issue presents a more d'fficult problem. Respondent alleges that the Act requires final determination of a petition regarding an inmate in one of the first three classes to be made before the expiration of his sentence. There is no similar time limit for completion of proceedings regarding sexually dangerous inmates, although certainly a reasonable standard applies on a due process basis. (See *People ex rel. Sm'th v. Jackson*, 37 Ill.2d 379, 227 N.E.2d 366 (1967).) The Act under consideration is not clear, since it provides that an inmate found to be in one of the first three classes is committed to the Department of Mental Health "upon expiration of his sentence." In *People ex rel. Smith v. Jackson*, 37 Ill.2d 379, 227 N.E.2d 366 (1967), the majority rejected the argument, by an inmate, that proceedings under a sexually dangerous petition had to be completed by the time his sentence expired. The majority of the court did not specifically discuss the same equal protection issue raised here although it was expounded at some length by Mr. Justice Schaefer in his dissent. The majority of the court thereby obviously rejected this contention. The court in the *Jackson* case expressly held that proceedings could be reasonably prolonged for a year past the convict's release date, at least where some delay was attributable to the convict. Presumably the *Jackson* opinion would be

authority for a conclusion that the same "reasonableness" test would apply to the completion of proceedings for inmates in the first three classes and would find no distinction unrelated to the object of the Act in the treatment accorded to those like respondent who are brought under the fourth class of sexually dangerous inmates.

On the basis of the precedent of *People ex rel. Smith v. Jackson, supra,* we find no constitutional infirmity in section 8 of the Act. We conclude, therefore, that respondent Foster was recommitted to the Department of Corrections in the Psychiatric Division in a procedure which does not violate his right to equal protection of the laws.

We find, accordingly, that the trial court had jurisdiction to consider the petition filed on the date fixed for Foster's release. Notably, on the precedent of the *Jackson* case, we find that section 8 of the Act referred to was not unconstitutional on the basis of the challenge made by respondent. The determination and judgment of the Circuit Court of Will County, finding respondent to be sexually dangerous and remanding him to the Department of Corrections until such time as his condition is found to have been alleviated, is affirmed.

Affirmed.

A. SCOTT, P. J., and DIXON, J., concur.