THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE E. OETGEN, Defendant-Appellant.

Third District    No. 3—93—0199

Opinion filed March 16, 1995.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Danner, State's Attorney, of Lewistown (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

The respondent, Bruce Oetgen, appeals from a decision of the circuit court revoking his conditional release and recommitting him to the Department of Corrections (DOC) as a sexually dangerous person. We reverse and remand.

The respondent was originally adjudicated a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (the Act) (725 ILCS 205/0.01 *et seq.* (West 1992)) in 1981. The respondent was conditionally released in August 1985. That conditional release was revoked in 1987 when respondent admitted a violation, and he was recommitted to the DOC. In March 1990, respondent was again conditionally released. Release was conditional upon, *inter alia,* respondent's living in a half-way house; receiving out-patient therapy; working; being tested for drugs; and obeying all laws, rules and regulations.

On September 25, 1992, the State filed a petition to revoke conditional release. The petition alleged that the respondent had violated the conditions of his release by committing an act of public indecency in Cook County on September 23, 1992. The petition was later amended in February 1993 to allege that respondent had pled guilty to the indecency charge in Cook County proceedings on December 1, 1992.

The respondent then filed an answer and a motion to dismiss the State's amended petition. The respondent alleged that he was entitled to release since he had been in custody from September 23, 1992, forward. He also noted that he had pled guilty to the charge of public indecency and contended that this act barred the State from using the incident as the basis for revocation of his conditional release.

At a hearing on the motion to dismiss, the respondent testified concerning his arrest, his guilty plea, his receiving a sentence for "time served" and his being held on a Fulton County "hold" placed upon him.The court denied the motion to dismiss. The court ruled that the speedy-trial question was resolved by reference to the probation provisions of section 5—6—4 of the Unified Code of Corrections (730 ILCS 5/5—6—4 (West 1992)) and that, as a result, the 120-day period began to run on the date of the disposition of the Cook County charges. The court also found that *People v. Patch* (1973), 9 Ill. App. 3d 134, 293 N.E.2d 661, the case cited by respondent for his "bar to revocation" argument, was no longer good law.

On March 5, 1993, the State moved for summary judgment in the cause. The State argued that the respondent had admitted his guilty plea and that, as a result, he admitted the basis for the recommitment. The respondent opposed the State's motion and argued for a full hearing. Finding no procedural bar to the grant of summary judgment and ruling that there was no material issue in the case, the court granted the State's motion. The court then revoked respondent's conditional release and recommitted him to the DOC.

■ The respondent first argues on appeal that the court should have dismissed the petition to revoke conditional release because the State could not move to revoke release on the basis of conduct which it had already formally prosecuted in a criminal case. The respondent's argument is based on the Second District Appellate Court's decision in *Patch*. In that case, the court, relying on *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736, held that a person cannot be committed as sexually dangerous, or recommitted after a conditional release, on the basis of conduct for which he has already been prosecuted and convicted in a criminal proceeding. The only reason given by the *Patch* court for its decision was *Redlich*.

The second district later admitted it erred in *Patch* by relying on *Redlich*. In *People v. Cooper* (1988), 177 Ill. App. 3d 942, 950, 532 N.E.2d 1022, 1026-27, the court stated the following:

"Defendant relies on *People v. Patch* (1972), 9 Ill. App. 3d 134, 138, where this court, citing *People v. Redlich* (1949), 402 Ill. 270, held that a defendant could not be recommitted under the Act after the prosecutor had obtained a conviction for the criminal offense. The State correctly argues that this court erroneously applied *Redlich* in *Patch*. As pointed out by the State, *Redlich* concerned a statute much different from the Act. The statute in *Redlich* provided for the commitment of criminal sexual psychopaths until they recovered so that they could stand trial. (*Redlich*, 402 Ill. at 276.) Thus, *Redlich* stated that when a defendant had already been convicted for the crime, there was no need for a determination of defendant's mental condition. The purpose of the statute was defeated. *Redlich*, 402 Ill. at 276."

On appeal, our supreme court agreed with the second district that the rationale of *Redlich* did not apply to the current statute, which has as its purposes treatment of the person and protection of the public. (See *People v. Cooper* (1989), 132 Ill. 2d 347, 547 N.E.2d 449.) Neither the second district nor the supreme court explicitly overruled *Patch*, nevertheless, because the issue in *Cooper* was whether the State could revoke a sexually dangerous person's conditional release based on conduct for which he was prosecuted in a different State.

Although the supreme court did not explicitly overrule *Patch* in *Cooper*, it did use the following language:

"The Act unequivocally states that if a person violates a condition of his release 'the court shall revoke such conditional release and recommit the person.' [Citation.] Nowhere does the Act qualify this statement by saying 'all violations except those for which the person is convicted and incarcerated.' Clearly, the language of the Act requires a trial court to recommit a person who violates a condition, and the court has no discretion not to recommit. Furthermore, recommitment of a person for the same act for which he was convicted does not thwart the Act's two purposes of treatment and protection of the public; instead, recommitment advances them." (*Cooper*, 132 Ill. 2d at 361, 547 N.E.2d at 456.)

Thus, it is not difficult to discern the supreme court's view of the result reached in *Patch*. Further, as previously stated, the only rationale for the result in *Patch* was *Redlich*, and both the second district and the supreme court have held that it is error to apply *Redlich* to the current statute.

Therefore, if we were to follow *Patch*, we would need some rationale other than that relied on by the *Patch* court. The respondent appears to use a double jeopardy analysis, but we reject this argument for two reasons. First, it has been held that double jeopardy does not apply to proceedings under the Act because those proceedings are civil rather than criminal. (*People v. McDonald* (1989), 186 Ill. App. 3d 1096, 542 N.E.2d 1266.) Second, in the context of probation revocation proceedings, it has been held that a defendant can be criminally prosecuted for an offense and have his probation revoked in another case for the same offense. (*People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766; *People v. Ward* (1980), 80 Ill. App. 3d 253, 399 N.E.2d 728.) In *Vahle*, this court explained that at the revocation proceeding the defendant was being tried for violating the terms of his probation, not for the substantive offense. Likewise, the issue in respondent's case was whether he violated the terms of his conditional release. He was not being prosecuted again for the crime of public indecency.

The rationale for *Patch* has been discredited by both the court that issued the opinion and by the supreme court. Further, the *Patch* holding cannot be supported by a double jeopardy analysis. Because we have not been presented with any persuasive arguments as to how *Patch* could still be considered good law, we conclude that the trial judge was correct in not following that case.

■ Next, respondent argues that the trial court erred in granting summary judgment and in not conducting a hearing on the question

of revoking respondent's conditional release. We agree. The State, relying on section 3.01 of the Act (725 ILCS 205/3.01 (West 1992)), argues that summary judgment was an appropriate disposition because proceedings under the Act are civil in nature. However, that section provides that the provisions of the Civil Practice Law apply *"except as otherwise provided in this Act."* (Emphasis added.) (725 ILCS 205/3.01 (West 1992).) Section 9 of the Act (725 ILCS 205/9 (West 1992)) provides, *inter alia*:

> "In the event the person violates any of the conditions of such order, the court shall revoke such conditional release and recommit the person *pursuant to Section 5—6—4 of the Unified Code of Corrections* under the terms of the original commitment." (Emphasis added.)

Section 5—6—4(b) of the Unified Code of Corrections (730 ILCS 5/5—6—4(b) (West 1992)), which concerns revocation of probation or conditional discharge, states that the court "shall conduct a hearing of the alleged violation." Further, section 5—6—4(c) (730 ILCS 5/5—6—4(c) (West 1992)) provides that the State's evidence "shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel."

Moreover, it has been stated that due process at a probation revocation proceeding requires that "the probationer have notice of the alleged violations and that the revocation follows a hearing at which the probationer had an opportunity to be heard, present evidence, confront witnesses, and be represented by counsel." (*People v. Kruszyna* (1993), 245 Ill. App. 3d 977, 981, 615 N.E.2d 748, 751.) More specifically, our supreme court in *Cooper* held that the due process requirements of section 5—6—4 apply when the State seeks to revoke a sexually dangerous person's conditional release. (*Cooper*, 132 Ill. 2d at 364-65, 547 N.E.2d at 458.) Accordingly, we hold that summary judgment may not be used when the State seeks to revoke a sexually dangerous person's conditional release and that respondent is entitled to a hearing on the State's petition.

■ The respondent next argues that the Act deprives the releasee of due process and equal protection by not requiring a present showing of sexual dangerousness at the time of recommitment. At oral argument, counsel for the respondent conceded that his argument on this point was essentially a petition for rehearing of our decision in *People v. Parrott* (1993), 244 Ill. App. 3d 424, 613 N.E.2d 305. We reject the respondent's argument on this issue for the reasons expressed in *Parrott*.

■ Finally, respondent argues that section 9 of the Act denies due process and equal protection in requiring that revocation of

conditional release necessarily be followed by recommitment to the DOC without consideration of less restrictive alternatives. Respondent is incorrect when he asserts that the Act automatically requires recommitment to the DOC without consideration of less restrictive alternatives. Section 9 provides that, following revocation of conditional release, the respondent is recommitted under the terms of the original commitment. Section 8 of the Act governs original commitment proceedings and provides as follows:

> "If the respondent is found to be a sexually dangerous person then the court shall appoint the Director of Corrections guardian of the person found to be sexually dangerous and such person shall stand committed to the custody of such guardian. The Director of Corrections as guardian shall keep safely the person so committed until the person has recovered and is released as hereinafter provided. The Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery. The Director may place that ward in any facility in the Department of Corrections or portion thereof set aside for the care and treatment of sexually dangerous persons. The Department of Corrections may also request another state Department or Agency to examine such patient and upon such request, such Department or Agency shall make such examination and the Department of Corrections may, with the consent of the chief executive officer of such other Department or Agency, thereupon place such patient in the care and treatment of such other Department or Agency." (725 ILCS 205/8 (West 1992).)

Therefore, the Director is charged with the task of providing care and treatment designed to effect recovery. Contrary to respondent's argument, section 8 provides the Director with a number of alternatives to consider in determining how best to provide care and treatment for his ward. He may place that ward in any facility of the DOC set aside for the care and treatment of sexually dangerous persons, but he also may request that the person be placed in the care of any other State department or agency, such as the Department of Mental Health and Developmental Disabilities. Therefore, the Act does not require confinement in the DOC. Respondent also argues that, in practice, all sexually dangerous persons are sent to the Menard Psychiatric Center. Nevertheless, such an argument does not go to the constitutionality of the Act as written.

Respondent further contends that the Act violates the constitutional requirement of equal protection of the law because it does not provide for consideration of treatment alternatives for sexually dangerous persons when such consideration is provided to others similarly situated. Respondent points out that a mentally ill person

involuntarily committed under the Mental Health and Developmental Disabilities Code (405 ILCS 5/3—811 (West 1992)), a defendant found unfit for criminal trial under the Code of Criminal Procedure of 1963 (725 ILCS 5/104—17 (West 1992)), and a defendant found not guilty by reason of insanity under the Unified Code of Corrections (730 ILCS 5/5—2—4(a) (West 1992)) all receive a judicial determination of appropriate placement.

The supreme court addressed this argument in *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28, when it held that substantial differences existed between proceedings under the Act and proceedings under the Mental Health and Developmental Disabilities Code that justified different procedures for treating the two groups. The factors relied on by the supreme court to differentiate sexually dangerous persons from the broader group of persons who fall within the provisions of the Mental Health and Developmental Disabilities Code were: "(1) the existence of a mental disorder for more than one year; (2) the existence of criminal propensities to the commission of sex offenses; and (3) the existence of demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children." *Pembrock*, 62 Ill. 2d at 321-22, 342 N.E.2d at 30.

■ Those factors which set sexually dangerous persons apart from those who fall within the provisions of the Mental Health and Developmental Disabilities Code also set sexually dangerous persons apart from those unfit to stand trial and those found not guilty by reason of insanity. Respondent, like the defendant in *Pembrock*, has failed to show why the legislature is not justified in prescribing a different manner of treatment for these different groups. (See also *People v. Lovett* (1992), 234 Ill. App. 3d 645, 600 N.E.2d 893.) We find that the Act does not violate the equal protection clause.

■ Respondent's final contention in this regard is that his equal protection rights were violated because the Act makes recommitment mandatory upon a finding that he has violated a condition of his release while a convicted criminal who subsequently violates a condition of his probation has a full range of sentencing options open to him. We reject this argument for the reasons stated in *Parrott*.

For the foregoing reasons, the judgment of the circuit court of Fulton County is reversed, and the cause is remanded for a hearing on the State's petition to revoke conditional release.

Reversed and remanded.

HOLDRIDGE and McCUSKEY, JJ., concur.