THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL G. McVEAY, Defendant-Appellant.

Second District   No. 2—97—0127

Opinion filed February 5, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Following a bench trial, defendant, Randall G. McVeay, was declared to be a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (the Act) (725 ILCS 205/0.01 et seq. (West 1996)). Pursuant to the Act, the trial court committed defendant to the custody of the Director of Corrections until defendant's recovery and release. See 725 ILCS 205/8 (West 1996). Defendant presents three issues in this appeal: (1) whether the trial court erred when it refused to appoint an independent psychiatrist for him; (2) whether he was denied due process; and (3) whether he was denied equal protection of the laws. We affirm.

In May 1996 defendant was charged by indictment with one count of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 1996)). In August 1996 the State petitioned the trial court to conduct a hearing to determine whether defendant should be committed and detained as a sexually dangerous person, in accordance with the provisions of the Act. Pursuant to section 4 of the Act, the trial court ap-

pointed two psychiatrists to examine defendant. See 725 ILCS 205/4 (West 1996).

At a hearing on September 9, 1996, defense counsel orally requested the appointment of a forensic psychiatrist to examine defendant. The State objected, stating that defendant was not entitled to an additional expert under the statute. The State also informed the trial court that the county provides funds for the experts rather than the State; hence, no bias against defendant existed. The State argued that the two appointed psychiatrists were independent and had never been previously employed by the county or the State's Attorney's office. The trial court continued the case, and defense counsel represented that a written motion would be provided.

On September 11, 1996, defense counsel informed the trial court that he had filed a written motion requesting the appointment of a forensic psychiatrist on defendant's behalf. Parenthetically we note that the record reflects no such motion. After taking the case under advisement, the trial court ruled that no statutory authority or case law existed to support defendant's request and subsequently denied the motion. The trial court added, though, if the results from the two experts were "skewed in the State's favor," it would reconsider the matter.

The hearing on the State's petition commenced in October 1996. The record reflects that C.H., the victim of the alleged offense who was eight years old at the time, went to defendant's apartment to look at a bicycle. Defendant worked as a maintenance man at C.H.'s apartment building. Defendant went into a back room with C.H. where the bicycle was stored and stood behind C.H. According to C.H., defendant reached around from behind, placed his hands over C.H.'s penis from the outside of his clothing, and rubbed it several times. C.H. told defendant to stop three times, unlocked the apartment door, and ran. Defendant followed C.H. out of the apartment to C.H.'s apartment. After defendant left, C.H. told his mother what had happened. C.H.'s mother, K.P., called the police.

Rockford Detective Dennis Woody investigated the incident. He photographed defendant's apartment; it was decorated with stuffed animals, and a large dish of candy was on the living room coffee table. Woody interviewed both defendant and C.H. Defendant explained to Woody that he had received counseling in prison but that he still had sexual urges toward children. Defendant tried to divert his urges with prayer or by watching television. Defendant denied having fondled or having attempted to fondle C.H.

Psychiatrist Jonathan Kelly, M.D., one of the court-appointed psychiatrists, testified. Kelly interviewed defendant for approximately

three hours. His evaluation consisted of reviewing reports and evaluations, including defendant's probation and parole reports, psychological and psychiatric evaluations, and records from the Washington Department of Corrections. Kelly diagnosed defendant as suffering from homosexual pedophilia, borderline intellectual function, and personality disorder. In Kelly's opinion, defendant's mental disorders have been lifelong, and he exhibits a propensity towards the commission of sexual offenses and molestation of children.

On cross-examination, Kelly acknowledged that he did not give additional intelligence testing, personality disorder tests, or sexual problem questionnaires to defendant. In this regard, Kelly testified that the State related to him that limiting the cost of defendant's examination was a concern. Despite the financial limitations, though, Kelly testified that he believed that both his diagnosis of and opinions concerning defendant were adequate.

The other court-appointed psychiatrist, Dr. Daniel Hardy, also testified. Hardy interviewed defendant for approximately two hours. Hardy also reviewed defendant's records dating back to 1967 and up to his police reports from 1996. He diagnosed defendant as suffering from pedophilia and personality disorder not otherwise specified, in that defendant appeared to have an antisocial and avoidant personality disorder along with borderline intellectual functioning. He further opined, as did Kelly, that defendant's mental disorder had existed in excess of one year prior to the filing of the State's petition to find defendant a sexually dangerous person. Hardy believed that defendant still had a propensity to commit sex offenses against minor children.

On cross-examination, Hardy discussed options of treatment, including monitoring at a halfway house. He opined, though, that defendant was not suitable for outpatient treatment.

At the conclusion of its case, the State presented exhibits that included documents related to defendant's prior convictions from Washington and photographs of his apartment in Rockford.

Both sides presented closing arguments, and the trial court took the case under advisement. In January 1997 the trial court found that the State met its burden to prove beyond a reasonable doubt that defendant is a sexually dangerous person within the requirements of the Act. The trial court appointed the Director of the Department of Corrections as defendant's guardian and committed defendant to the custody of the guardian until he has recovered. Defendant timely appeals.

Defendant's first issue on appeal is whether the trial court erred when it refused defendant's request to appoint an additional independent psychiatrist to examine him. After the State brought a petition to

declare defendant a sexually dangerous person, the trial court ordered the appointment of two psychiatrists to examine defendant and file a report containing the results of their examination. See 725 ILCS 205/4 (West 1996).

■ ■ Section 4 of the Act provides that "the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination." 725 ILCS 205/4 (West 1996). An issue of statutory interpretation concerns a question of law; hence, our standard of review is *de novo*. *People v. Krause*, 273 Ill. App. 3d 59, 62 (1995). The primary rule of statutory interpretation is to ascertain and give effect to the legislative intent. *People v. Haynes*, 174 Ill. 2d 204, 222 (1996). The best indicator of that intent is the language of the statute, giving the language its plain and ordinary meaning. *People v. Koppa*, 184 Ill. 2d 159, 169 (1998). We must also consider all parts of the statute together. *People v. Warren*, 173 Ill. 2d 348, 357 (1996).

■ Proceedings under the Act are civil, not criminal, in nature. 725 ILCS 205/3.01 (West 1996); see also *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986) (interpreting Illinois law); *People v. Harter*, 86 Ill. App. 2d 461 (1967). However, because of the possible loss of individual liberty, certain procedural safeguards normal to criminal prosecutions must be followed, including strict construction of the statute. *People v. Turner*, 63 Ill. App. 2d 353, 356 (1965). For example, a defendant is entitled to the appointment of counsel if indigent; calling the defendant as an adverse party is a violation of the privilege against self-incrimination; evidence of the defendant's prior arrests for similar offenses is incompetent; and where a criminal charge on which the defendant was held in jail in excess of four months cannot be prosecuted, it cannot serve as a basis for proceedings under the Act. See *People v. Beshears*, 65 Ill. App. 2d 446 (1965).

■ Defendant correctly acknowledges that nothing in section 4 explicitly provides the defense with the right to retain, or have appointed, its own expert to perform a psychiatric examination. We decline to read such a requirement into the Act. Furthermore, the trial court is the body vested with appointing the examining psychiatrists, under section 4 of the Act, as opposed to having them selected by the State and/or the defendant. See *People v. Antoine*, 286 Ill. App. 3d 920, 926-27 (1997).

Because the psychiatrists are appointed by the trial court and not by the parties, we shall presume they are impartial and independent at the outset. If, however, a defendant can demonstrate that she or he

was prejudiced by such an appointment, that defendant should not be precluded from bringing a motion to substitute the court-appointed psychiatrist. The trial court would then conduct a hearing to determine the independence of the court-appointed psychiatrist and the alleged prejudice against the defendant. In this case, however, the record reflects that no such motion was brought. Defendant never objected at trial or on appeal to either of the psychiatrists appointed or their testimony. Moreover, defendant does not now claim that any prejudice resulted from the court's appointment and subsequent testimony of the psychiatrists. In reviewing the plain language of the statute, we conclude that section 4 of the Act does not mandate the appointment of a psychiatrist of the defendant's choosing. Therefore, we hold that the trial court did not err in denying defendant's motion requesting the appointment of an independent psychiatrist for defendant.

■ The provision for psychiatric board examination of one accused of specified sex offenses to ascertain whether an individual is a sexually dangerous person is a statutory recognition of fact that a trial court's determination of sexual deviation is based primarily on medical evidence. See *In re Miller*, 98 N.H. 107, 109, 95 A.2d 116, 117 (1953). The legislature may statutorily require the trial court to appoint two qualified psychiatrists to personally examine an alleged sexually dangerous person to assist the trial court in ascertaining whether the person is sexually dangerous. We find no error in that the trial court, and not the State, chooses the two psychiatrists.

Defendant's reliance on two cases is misplaced. He relies on *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), as support for his assertion that he, as an indigent defendant, was deprived of his constitutional right to the appointment of a psychiatrist. In *Ake*, the United States Supreme Court held that an indigent defendant has a constitutional right to the appointment of a psychiatrist under certain circumstances. Specifically, where a defendant makes a preliminary showing that sanity is a significant factor, a defendant must be permitted access to a psychiatrist. *Ake*, 470 U.S. at 74, 84 L. Ed. 2d at 60, 105 S. Ct. at 1091-92. We find *Ake* inapplicable to the present case. Here, the State did not order psychiatric testing to bolster its case; rather, the trial court ordered two psychiatrists to examine defendant, as it was statutorily required to do.

Defendant also relies upon *People v. Finkle*, 214 Ill. App. 3d 290 (1991), for support. However, *Finkle* concerns an appeal from the denial of an application showing recovery after treatment, as opposed to the present case, which is a proceeding on an initial petition seeking to have defendant declared a sexually dangerous person.

■ Defendant also claims that section 4 of the Act is unconstitutional in that he was denied due process and equal protection of the laws. Initially, we note that the question of the constitutionality of a statute governing sexually dangerous persons cannot be raised on appeal where it had not been raised during any prior proceedings. *People v. Hamil*, 20 Ill. App. 3d 901, 904 (1974). In the present case, the record reflects that the constitutionality of any portion of the Act was never called into question at any stage of the proceedings. However, under the plain error doctrine, we may address a waived issue if the evidence is closely balanced or if the error affects substantial rights. 134 Ill. 2d R. 615(a); *People v. Towns*, 174 Ill. 2d 453, 464 (1996), citing *People v. Carlson*, 79 Ill. 2d 564 (1980). Although proceedings under the Act are civil in nature, due process requirements must be met and requirements of criminal proceedings accorded to defendant since the proceedings could result in a deprivation of liberty. *People v. Studdard*, 51 Ill. 2d 190, 195-96 (1972). Therefore, we will address defendant's concerns.

Defendant calls to our attention that individuals prosecuted pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West Supp. 1997)) are afforded the right to retain or have appointed an expert to perform a psychiatric examination. See 725 ILCS 207/25 (West Supp. 1997). Defendant contends that section 4 of the Act at issue in the present case is unconstitutional in that no rational basis exists for treating persons subject to a petition under the Act differently from those persons prosecuted pursuant to the Sexually Violent Persons Commitment Act. Defendant argues that, as a result of the trial court's denial of his motion requesting an independent psychiatrist, he was denied due process and equal protection of the laws. See Ill. Const. 1970, art. I, § 2.

■ In the present case, the trial court adjudged defendant a sexually dangerous person in accordance with the provisions of the Act. Our legislature defines "sexually dangerous persons" as follows:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 1996).

In section 5 of the Sexually Violent Persons Commitment Act, our legislature defines "sexually violent person" as follows:

"[A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or

has been found not guilty of or not responsible for a sexually violent offense by reason of insanity, mental disease or mental defect, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West Supp. 1997).

Our legislature has provided definitions for both classifications of individuals with clearly distinct criteria, and indeed, our legislature is vested with the authority to provide such definitions. See *People v. Sims*, 382 Ill. 472, 475 (1943). Because these sections apply to every person coming within such definitions of a sexually dangerous person or sexually violent person, no basis for discrimination should exist. Defendant has failed to show how classifications based on the factors set forth in the Act and set forth in the Sexually Violent Persons Commitment Act are unreasonable. Our review of the legislative history also supports the State's position that the Sexually Violent Persons Commitment Act encompasses a more limited group of offenders than those to whom the Act applies. Presumably, a "sexually violent person," who is likely to commit acts of sexual violence in the future, creates different societal problems from those created by a "sexually dangerous person," who has suffered from a mental disorder for more than one year, exhibits criminal propensities to the commission of sexual offenses, and who demonstrates propensities toward acts of sexual assault or acts of sexual molestation of children. See *People v. Pembrock*, 62 Ill. 2d 317, 322 (1976). Moreover, initiating a proceeding against defendant under the Act, as opposed to the Sexually Violent Persons Commitment Act, was a matter of prosecutorial discretion. See *People v. Newbern*, 18 Ill. App. 3d 532, 539 (1974). Defendant has failed to show why, in light of these factors, the legislature is not justified in prescribing different definitions, procedures, and methods of treatment for different types of offenders.

The purpose of the Act is twofold: (1) to protect the public by sequestering the sexually dangerous person until such time as the individual is recovered and released, and (2) to subject the sexually dangerous person to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated. *People v. Galba*, 273 Ill. App. 3d 95, 100 (1995). Reviewing courts have upheld the statutes under the Act as valid and proper exercises of the state's police power as a measure of public safety. *People ex rel. Elliott v. Juergens*, 407 Ill. 391, 397 (1950). Our review of the Act, the Sexually Violent Persons Commitment Act, and the relevant legislative history leads us to conclude that a rational basis exists for treating persons subject to a petition under the Act differently from those

persons prosecuted pursuant to the Sexually Violent Persons Commitment Act.

We hold that the Act was constitutionally applied to defendant. Due process was satisfied where the primary purposes of the statute, giving defendant an opportunity to receive help and protecting members of the public from defendant until his recovery, were legitimate legislative objectives and the statute is rationally related to the accomplishment of the objectives. Moreover, defendant was afforded a full and complete due process hearing. Defendant was given an opportunity to challenge the sufficiency of any material aspect of both psychiatric reports, he was entitled to be confronted with witnesses against him, and he had the right to cross-examine and the right to offer evidence on his own behalf. See *People v. Abney*, 90 Ill. App. 2d 235, 244 (1967) (stating, *inter alia*, that, in a proceeding pursuant to the Act, a fair trial requires that medical evidence be introduced so that it may be tested properly by cross-examination). Prior to his commitment, defendant was found beyond a reasonable doubt to be a danger to society; the trial court had received evidence on issues of whether defendant was suffering from a mental disorder, whether the mental disorder existed not less than one year prior to the date of filing the State's petition, whether defendant exhibited criminal propensities to the commission of sex offenses, and whether defendant had demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. See 725 ILCS 205/1.01 (West 1996). The trial court also considered whether defendant was more appropriately suited for a halfway house.

Finally, we find that the statute does not deprive defendant of his equal protection rights. The Act and its provisions apply to *all persons* coming within the classification of alleged sexually dangerous persons. See 725 ILCS 205/1.01 (West 1996). The confinement of defendant to the care of the Director of Corrections under the Act prescribing that sexually dangerous persons be so committed did not deny defendant equal protection of the law since the procedures applying to all classes were similar. See *People v. Foster*, 22 Ill. App. 3d 1033 (1974). We also determine that no violation of equal protection exists in that defendant failed to show that he was treated differently from any other person who was charged with the same offense and who satisfied the definition of sexually dangerous person. See *People v. Lovett*, 234 Ill. App. 3d 645 (1992).

Inasmuch as defendant is the party challenging the constitutionality of a statute, he bears the burden of clearly establishing the constitutional violation. See *People v. DePalma*, 256 Ill. App. 3d 206, 210 (1994). Upon our review of the issues presented, we determine that defendant has failed to satisfy such burden.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN, P.J., and GEIGER, J., concur.