THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MORRIS McDOUGLE, Defendant-Appellant.

Second District   No. 2—97—0475

Opinion filed March 3, 1999.

510

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of DePaepe & Davison, of Springfield, for the People.

JUSTICE GEIGER delivered the opinion of the court:

On February 21, 1996, the defendant, Morris McDougle, filed an application for recovery pursuant to section 9 of the Sexually Dangerous Persons Act (the Act) (725 ILCS 205/9 (West 1996)). Specifically, the defendant sought a transfer from the Illinois Department of Corrections (DOC) to the Illinois Department of Mental Health and Developmental Disabilities (Department of Mental Health) so that he could receive additional psychiatric treatment for his mental illness. On March 13, 1997, the trial court denied the application after determining that it lacked authority under the Act to order such a transfer. The defendant appeals, contending that the trial court improperly interpreted the language of the Act. The defendant alternatively contends that the Act violates his constitutional rights to due process and equal protection. We affirm.

## I. Background

In 1975, in the circuit court of Winnebago County, the defendant was adjudicated a sexually dangerous person and was committed into

the custody of the DOC. The defendant's adjudication as a sexually dangerous person was predicated upon a charge that he had fondled the private parts of a minor child under the age of 16. Since the time of his adjudication, the defendant has been confined in the DOC, except for approximately three months in 1983 when he was conditionally released. The defendant is currently in confinement at the Big Muddy River Correctional Center in Ina.

In his application, the defendant alleged as follows: (1) that he has complied with the rules and regulations of confinement; (2) that he has displayed a willing and respectful attitude of cooperation in submitting to therapy; (3) that he has made significant progress in therapy and learned to control his sexually inappropriate behavior; and (4) that he has recovered and is fully capable of resuming his position in society. The application was accompanied by a motion for leave to file *in forma pauperis*. On February 29, 1996, the public defender was appointed to represent the defendant.

At the hearing on the application, the defendant did not request conditional release from his confinement; rather, the defendant requested a transfer from the DOC to the Department of Mental Health so that he could receive more effective psychiatric treatment designed to effect his recovery. The defendant's counsel argued that the DOC was not meeting its statutory obligation under section 8 of the Act to provide the defendant with treatment "designed to effect recovery." See 725 ILCS 205/8 (West 1996).

The State's only witness at the hearing was Dr. Mark Carich, a psychological administrator employed at Big Muddy River Correctional Center. Dr. Carich met with the defendant for about one hour on May 21, 1996, after which he prepared a report detailing his opinions. Dr. Carich diagnosed the defendant as having an undifferentiated schizophrenia-schizofactive disorder, organic mental disorder, paraphilia with features of exhibitionism, voyeurism, sexual sadism and pedophilia with both genders, mild mental retardation, and personality disorder. Dr. Carich testified that the defendant hallucinates, talks to himself, and hears voices that tell him to have sex and to masturbate.

Because of these behaviors, the defendant is incapable of participating in the sex offender group therapy program at Big Muddy River Correctional Center. Dr. Carich testified that this program was the only regular therapy available to the defendant for the treatment of his sexual behavioral disorder. He further testified that the defendant was occasionally able to participate in "socialization events," which are party-like gatherings at which offenders can interact socially. Dr. Carich testified that socializing could help the defendant develop

motivation and commitment towards recovery. In addition to participating in the socialization events, the defendant also meets with a psychiatrist once a month for approximately 15 to 20 minutes.

Dr. Carich further testified that, because the defendant is incapable of participating in the other programs available at Big Muddy River Correctional Center, the defendant's primary treatment is limited to custodial care. Dr. Carich explained that the DOC attempts to maintain the defendant in a comfortable environment and makes sure that he does not hurt anyone. The defendant is also treated with two antipsychotic drugs, Haldol and Artain. Dr. Carich explained that the defendant had "decompensated" during his years with the DOC and that his condition would not improve as long as he remained on "maintenance."

Dr. Carich also testified concerning an incident involving the defendant in January 1996. The defendant, who was staying in the health care unit at Big Muddy River Correctional Center, apparently grabbed a nurse by the arm and tried to force her into a closet. During this incident, the defendant was holding his penis in his hand. Dr. Carich acknowledged that the incident did not involve physical injury, nor did the nurse have to summon help. Dr. Carich opined that the defendant continues to require a structured environment and that he should not be released because he would likely victimize someone sexually.

When questioned about transferring the defendant to the Department of Mental Health, Dr. Carich stated his belief that the treatment the defendant would receive in a mental health facility would perhaps be the same treatment he received from the DOC. Dr. Carich explained that the defendant can handle only custodial care and that he remains sexually dangerous and needs a structured environment. Dr. Carich acknowledged that the Alton Mental Health Center has a forensic unit that treats people who suffer from both psychosis and mental retardation. He testified that he had no opinion as to whether the defendant would be better off in the DOC or the Department of Mental Health and would not have a problem with treatment from either agency.

Dr. Carich gave the following additional testimony on cross-examination concerning the subject of transfer:

"Q. Can you tell the specific reason why the next level, whoever makes the decision about taking him from where he is now to the Department of Mental Health, why that has not been done, why was that turned down specifically?

A. It has not been turned down by the director, and in fact I would suggest that you guys write a memoranda or letter requesting that.

Q. You did that before this hearing 3 weeks ago you said you were going to ask them?

A. I consulted with the project chairperson.

Q. What was the project chairperson's response?

A. That at this time that she advised not to bring it to the director at this time.

Q. For what reason?

A. She did not give me an exact specific reason. She had indicated that a variety of different laws are in the process [sic] and that apparently the departments are trying to figure out which one is going to handle the various sex offenders."

The defendant's mother, Chula McDougle, was the only witness called to testify on the defendant's behalf. Chula McDougle testified that the defendant was living in her home in 1975 when he originally was adjudicated a sexually dangerous person. She testified that, at that time, the defendant was able to converse with her, was able to hold a job, and did not have problems with personal hygiene. She testified that since 1981 the DOC has "destroyed" her son.

During closing argument, defense counsel argued that the defendant was not receiving treatment designed to effect his recovery as required by section 8 of the Act. Defense counsel argued that the defendant had been "warehoused" and that his treatment plan was designed to make sure that he never left the DOC or got any better. Defense counsel requested the trial court to "mandate" the DOC to exercise its discretion to place the defendant in a mental health facility, preferably, the Alton Mental Health Center.

The trial court denied the defendant's application, explaining its reasoning as follows:

"I'm not satisfied that I have the authority to do that [order a transfer]. I think the ball is [in] your court on that issue.

*** [A]ll I heard today was a credible opinion that [the defendant] is being provided with the only form of treatment, and defense may quarrel with the word treatment, but it is treatment to the extent that [the defendant] unfortunately is capable of participating in treatment.

And I have only one opinion and one professional opinion and that is the sex offender program in which he would normally be participating in with the hope of improving his condition is beyond his capacity to participate. Hearing nothing to the contrary I have to accept that opinion and deny the application for recovery."

Following the denial of his petition for rehearing, the defendant filed a timely notice of appeal.

## II. Analysis

### A

The defendant's first argument on appeal is that the trial court erred in ruling that it lacked authority to review the DOC's decision not to transfer him to a facility operated by the Department of Mental Health (now the Department of Human Services). The defendant argues that such authority is implied by the general statutory scheme of the Act, which requires the DOC to provide care and treatment designed to effect recovery (725 ILCS 205/8 (West 1996)). The defendant also argues that judicial review of his care and treatment under the Act is necessary to comport with his due process rights.

■ Prior to reaching the merits of the defendant's argument, a brief overview of the provisions of the Act would be useful. Under the Act, the State may seek an involuntary, indeterminate institutional commitment in lieu of a criminal prosecution if a person is charged with a criminal offense and is believed to be sexually dangerous. *United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931, 933 (7th Cir. 1975). The Act defines a sexually dangerous person as one who (1) has suffered from a mental disorder for a period of not less than one year; (2) has criminal propensities to the commission of sex offenses; and (3) has demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. 725 ILCS 205/1.01 (West 1996).

■ Upon the receipt of a petition alleging sexual dangerousness, the trial court must appoint two psychiatrists to examine the person so charged. 725 ILCS 205/4 (West 1996). Although proceedings under the Act are civil in nature (725 ILCS 205/3.01 (West 1996)), the respondent is entitled to counsel and may demand a jury trial (725 ILCS 205/5 (West 1996)). Furthermore, the State is obligated to prove sexual dangerousness beyond a reasonable doubt. 725 ILCS 205/3.01 (West 1996); *People v. Pembrock*, 62 Ill. 2d 317, 321 (1976).

■ If the trial court finds the respondent to be a sexually dangerous person, then the respondent is committed to the custody of the Director of Corrections as guardian as provided under section 8 of the Act. Section 8 provides, in pertinent part:

"The Director of Corrections as guardian shall keep safely the person so committed until the person has recovered and is released as hereinafter provided. The Director *** as guardian shall provide care and treatment for the person committed to him designed to effect recovery. The Director may place that ward in any facility in the [DOC] or portion thereof set aside for the care and treatment of sexually dangerous persons. The [DOC] may also request another state Department or Agency to examine such patient and upon such request, such Department or Agency shall make such

examination and the [DOC] may, with the consent of the chief executive officer of such other Department or Agency, thereupon place such patient in the care and treatment of such other Department or Agency." 725 ILCS 205/8 (West 1996).

■ At any time, a person committed under the Act may file an application showing that he has recovered and request that he be released. 725 ILCS 205/9 (West 1996). When such an application is filed, the psychiatrist, sociologist, psychologist, and warden of the institution where the applicant is confined must prepare a sociopsychiatric report concerning the applicant. 725 ILCS 205/9 (West 1996). The trial court is required to consider this report at the hearing on the application. 725 ILCS 205/9 (West 1996). The statute provides that the trial court may conditionally release the applicant if it "finds that the patient appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered." 725 ILCS 205/9 (West 1996). The court may place conditions upon and require supervision of the sexually dangerous person in order to adequately protect the public. 725 ILCS 205/9 (West 1996). The applicant bears the burden of demonstrating his recovery by a preponderance of the evidence. *People v. Hannan*, 184 Ill. App. 3d 937, 944 (1989).

■ Whether the circuit courts of this state have the power to review the care and treatment administered by the DOC to a sexually dangerous person is a question of first impression. At the outset, we note that the courts of this state have the general authority to compel the DOC to follow its own regulations. See *Shea v. Edwards*, 221 Ill. App. 3d 219, 221 (1991); *Taylor v. Franzen*, 93 Ill. App. 3d 758, 761 (1981). Additionally, we note that the Act's provisions are to be construed in a manner such that those individuals committed under the Act are not deprived of their liberty interests without due process of law. *People v. Bruckman*, 33 Ill. 2d 150, 153-54 (1965); *People v. Dykema*, 89 Ill. App. 2d 409, 411-12 (1967). We are also bound to construe the statute in a manner so as to affirm its constitutionality if that can reasonably be done. See *People v. DePalma*, 256 Ill. App. 3d 206, 210 (1994).

As noted above, section 8 of the Act provides the DOC with substantial discretion in determining the appropriate care and treatment to be given to a sexually dangerous person. See *People v. Oetgen*, 269 Ill. App. 3d 1000, 1006 (1995). Aside from the application procedure summarized above, the Act contains no express provision enabling the trial court to monitor and review the treatment of and progress attained by a sexually dangerous person. As the defendant correctly notes, the Act is silent on its face as to whether the trial

court may review the plan of care and treatment administered by the DOC. Nor does the Act contain any requirement that the sexually dangerous person undergo periodic psychiatric examinations to determine whether he is making progress towards recovery.

However, the DOC's discretion to determine the appropriate care and treatment for a sexually dangerous person is not absolute. Section 8 of the Act charges the DOC with the task of providing that care and treatment "designed to effect recovery." 725 ILCS 205/8 (West 1996); see *Oetgen*, 269 Ill. App. 3d at 1006. Such a task is consistent with the purpose of the Act, which is to give the sexually dangerous person an opportunity to receive help for his propensity to commit sexual offenses and to protect the public from him until release is deemed desirable. *People v. Galba*, 273 Ill. App. 3d 95, 100 (1995). The Act disavows any interest in punishment and instead provides treatment to sexually dangerous individuals and establishes a system in which such individuals may be released after the briefest time in confinement. *Allen v. Illinois*, 478 U.S. 364, 370, 92 L. Ed. 2d 296, 305, 106 S. Ct. 2988, 2992 (1986).

■ Notwithstanding the nonpenal objectives of the Act, there can be no question that civil commitment under the Act results in the "drastic impairment of the liberty and reputation" of the individual committed. *Pembrock*, 62 Ill. 2d at 321. The individual must remain committed until a court determines that he has recovered and is no longer sexually dangerous. *People v. Bailey*, 265 Ill. App. 3d 758, 762 (1994). The Act provides for indefinite incarceration (*Stachulak*, 520 F.2d at 936) and those committed pursuant to its terms most surely suffer a " 'grievous loss' " (*Stachulak*, 520 F.2d at 935, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972)).

In light of the significant liberty interest at stake, we believe that due process requires that sexually dangerous persons must be provided the opportunity to seek judicial review of the adequacy of the care and treatment being provided to them by the DOC. We believe that such review is necessary in order to ensure that the DOC fulfills its statutory obligation to provide treatment designed to effect recovery. To hold otherwise would deprive the defendant of his only means to challenge the propriety of the treatment decisions being made by the DOC.

Indeed, without the power of review, there is no way to guarantee that the defendant will receive *any* treatment from the DOC. Such a potential abuse under the Act was foreseen by the Seventh Circuit Court of Appeals in *Stachulak*, 520 F.2d at 936, which warned:

"All too often the 'promise of treatment has served only to bring

an illusion of benevolence to what is essentially a warehousing operation for social misfits.' *Cross v. Harris*, 135 U.S. App. D.C. 259, 418 F.2d 1095, 1107 (1969). It is well settled that realities rather than benign motives or noncriminal labels determine the relevance of constitutional policies." *Stachulak*, 520 F.2d at 936.

Moreover, we note that during oral argument the State agreed that a sexually dangerous person has the inherent right, under section 9 of the Act, to file a petition seeking judicial review in instances where the DOC has failed to provide adequate treatment. The State further agreed that, once such a petition is filed, the circuit court has the authority to review the treatment alternatives available to the sexually dangerous person and to ensure that the DOC is providing treatment designed to effectuate his recovery.

In light of such concessions, and for the reasons articulated above, we believe that due process requires that sexually dangerous persons have the inherent right under section 9 of the Act to petition the circuit courts of this state for judicial review in instances where the DOC has failed to provide adequate care and treatment. We therefore hold that the trial court erred when it ruled that it lacked authority to review the DOC's decision not to transfer the defendant to the Department of Mental Health. In so holding, we note that, as with all other petitions filed pursuant to section 9 of the Act, the sexually dangerous person bears the burden of demonstrating that he is not being afforded treatment designed to effect his recovery as required under section 8 of the Act.

B

Notwithstanding the trial court's conclusion that it did not have authority to order the transfer, the record reveals that the trial court nonetheless considered the evidence presented at the hearing and made a determination on the merits. As detailed above, the trial court denied the application for recovery, finding that the DOC was providing the defendant the only form of treatment that he was capable of handling. On appeal, the defendant argues that such a finding was erroneous. The defendant argues that the evidence presented at the hearing demonstrated that the DOC had not explored alternative placements and treatments designed to effect his recovery.

■ In a proceeding on an application for recovery, the defendant has the burden of establishing his entitlement to the relief requested by a preponderance of the evidence. *People v. Sly*, 82 Ill. App. 3d 742, 747 (1980); *People v. Beksel*, 10 Ill. App. 3d 406, 407 (1973). In such proceedings, the reviewing court should not substitute its judgment for that of the trial court, as the trial court is in the best position to assess the testimony of the witnesses. See *People v. Harter*, 86 Ill. App.

2d 461, 468 (1967). The reviewing court will only reverse the trial court's findings if they are against the manifest weight of the evidence. See *People v. Pearson*, 65 Ill. App. 2d 264, 267 (1965). The trial court's findings are against the manifest weight of the evidence only when the opposite conclusion is clearly evident, plain, and indisputable. *Harter*, 86 Ill. App. 2d at 468-69.

At the hearing on the defendant's application for recovery, Dr. Carich was the only individual who presented testimony concerning the defendant's psychological condition and treatment. As detailed above, Dr. Carich testified that the defendant is being afforded all of the care and treatment reasonably possible considering his condition. According to Dr. Carich, the defendant is being provided a structured environment and is being given medication to control his psychotic behavior. The defendant's daily needs are being cared for and he occasionally participates in "socialization" events. Dr. Carich explained that the defendant is unable to participate in sex offender group therapy because of his psychotic behavior and his medication.

Dr. Carich further testified that he had no personal preference regarding whether the defendant remains in the DOC or is transferred to the Department of Mental Health. Dr. Carich testified that, if the defendant were transferred to the Department of Mental Health, he would perhaps be treated the same way and with the same medication. Dr. Carich concluded that the defendant was receiving the best care and treatment possible at this time.

Even though the defendant had the opportunity to provide evidence at the hearing, he presented no medical testimony demonstrating that the DOC has failed to provide him care and treatment in accordance with the requirements of the Act. Indeed, although the defendant received an independent psychiatric examination upon the filing of his application for recovery, the defendant chose not to have the independent psychiatrist testify at the hearing or submit his medical report into evidence. Moreover, the defendant failed to introduce any evidence demonstrating what additional care or treatment would be available to him in a facility of the Department of Mental Health.

Additionally, we note that the defendant has never made a formal written request to the DOC that he be transferred to the Department of Mental Health. Although Dr. Carich acknowledged that he had made an informal inquiry to the project chairperson, neither the defendant nor his counsel has ever sought a transfer through the appropriate administrative channels. Indeed, Dr. Carich noted that a transfer request had never been denied, and he urged the defendant's counsel to write a memorandum or letter requesting such a transfer. The defendant's application therefore seeks review of an administrative decision that has never been made.

■ In light of the foregoing discussion, we do not believe that the defendant has satisfied his burden of demonstrating by a preponderance of the evidence that the DOC is not providing him with care and treatment "designed to effect [his] recovery" (725 ILCS 205/8 (West 1996)). Rather, based on the evidence presented at the hearing, we agree with the trial court that the defendant is currently being afforded all of the care and treatment reasonably possible considering his condition. Although we acknowledge that the defendant's condition appears to have worsened during his incarceration with the DOC, we are nonetheless bound by the evidentiary record before us. We therefore hold that the trial court's finding that the defendant was receiving appropriate treatment was not against the manifest weight of the evidence.

## C

The defendant next challenges the constitutionality of the Act. Specifically, the defendant argues that the Act denies substantive due process and violates the equal protection clauses of the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) because it requires incarceration with the DOC and does not permit a consideration of treatment in a less restrictive setting. The defendant notes that such procedures are substantially different from the involuntary commitment proceedings for those individuals committed under the provisions of the Sexually Violent Persons Commitment Act (725 ILCS 207/1 et seq. (West Supp. 1997)).

■ The Sexually Violent Persons Commitment Act (725 ILCS 207/1 et seq. (West Supp. 1997) (eff. January 1, 1998)) applies to persons who are within 90 days of (1) discharge for a sentence that was imposed upon a conviction for a sexually violent offense; (2) release from a DOC juvenile correctional facility following a delinquency adjudication on the basis of a sexually violent offense; or (3) release from a commitment following a finding of not guilty of a sexually violent offense by reason of insanity. 725 ILCS 207/15(b) (West Supp. 1997). Under the Sexually Violent Persons Commitment Act, the State, at its discretion, may file a petition alleging that the individual has a mental disorder and is dangerous to others because such a disorder creates a substantial probability that the individual will engage in acts of sexual violence. 725 ILCS 207/15(b)(4), (b)(5) (West Supp. 1997). If the individual is found to be a sexually violent person beyond a reasonable doubt (725 ILCS 207/35(d) (West Supp. 1997)), then he is transferred into the custody of the Department of Human Services for control, care, and treatment until such time as the person is no longer a sexually violent person (725 ILCS 207/40(a) (West Supp. 1997)).

Following adjudication, the trial court is required to conduct a second hearing to consider whether the individual shall be placed in a secure facility or be granted conditional release. 725 ILCS 207/40(b)(2) (West Supp. 1997). In making this determination, the trial court may consider the nature and circumstances of the person's behavior, the person's past mental history and present mental condition, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment. 725 ILCS 207/40(b)(2) (West Supp. 1997). The statute requires that the Department of Human Services shall arrange for the care and treatment of the person "in the least restrictive manner" consistent with the requirements of the person and in accordance with the court's commitment order. 725 ILCS 207/40(b)(2) (West Supp. 1997). The sexually violent person must be reevaluated annually and the evaluations must be submitted to the trial court for review. 725 ILCS 207/55(a), (b) (West Supp. 1997).

The defendant argues that the Act is unconstitutional when compared to the provisions of the Sexually Violent Persons Commitment Act because the two statutes treat similarly situated persons differently. Specifically, the defendant notes that the Act requires placement with the DOC, while the Sexually Violent Persons Commitment Act places the individual into the custody of the Department of Human Services. Additionally, unlike the Act, the Sexually Violent Persons Commitment Act requires that the individual be treated in the "least restrictive manner" possible. Finally, the defendant notes that, unlike the Act, the Sexually Violent Persons Commitment Act requires periodic psychiatric examinations of the individual that must be filed with the trial court.

In considering an equal protection challenge, we must determine the proper level of scrutiny to be applied to the challenged classification. *People v. P.H.*, 145 Ill. 2d 209, 229 (1991). As correctly noted by the State, the Act does not contain a "suspect classification" and is therefore only subject to the rational basis test. See *Pembrock*, 62 Ill. 2d at 322 (applying rational basis test to determine constitutionality of the Act). The rational basis standard requires only that the classification reasonably further a legitimate governmental interest. *P.H.*, 145 Ill. 2d at 229. Under that standard, a challenged classification may be invalidated only if it is arbitrary or bears no reasonable relationship to the pursuit of a legitimate state goal. *P.H.*, 145 Ill. 2d at 229. Equal protection does not preclude different treatment for like persons where there is a rational basis for doing so. *Pembrock*, 62 Ill. 2d at 321.

Initially, we note that those individuals committed pursuant to the Act are not similarly situated to those committed under the Sexually

Violent Persons Commitment Act. Indeed in *People v. McVeay*, 302 Ill. App. 3d 960, 967 (1999), this court compared the provisions of the Act and the Sexually Violent Persons Commitment Act and determined that the classifications created under these two statutes are separate and distinct. In *McVeay*, we rejected an equal protection challenge to the Act that was predicated upon the fact that the Act does not contain an express provision affording the defendant the right to undergo an independent psychiatric examination as does section 25 of the Sexually Violent Persons Commitment Act (725 ILCS 207/25 (West Supp. 1997)). *McVeay*, 302 Ill. App. 3d at 966, 967-68. Upon comparing the two statutes, we noted:

> "Our review of the legislative history also supports the State's position that the Sexually Violent Persons Commitment Act encompasses a more limited group of offenders than those to which the Act applies. Presumably, a 'sexually violent person,' who is likely to commit acts of sexual violence in the future, creates different societal problems from those created by a 'sexually dangerous person,' who has suffered from a mental disorder for more than one year, exhibits criminal propensities to the commission of sexual offenses, and who demonstrates propensities toward acts of sexual assault or acts of sexual molestation of children." *McVeay*, 302 Ill. App. 3d at 967.

Additionally, we note that the Act provides an *alternative* to criminal prosecution (See 725 ILCS 205/1.01 (West 1996)), while commitment under the Sexually Violent Persons Commitment Act is pursued *in addition* to criminal proceedings (See 725 ILCS 207/40(a) (West Supp. 1997)).

Moreover, while we acknowledge that certain differences exist between the commitment procedures contained in the Act and the Sexually Violent Persons Commitment Act, we do not believe that such differences violate the equal protection guarantees under either the federal or state constitution. As will be detailed below, both statutes create similar mechanisms to provide for the care and treatment of sexually dangerous individuals and to remove such individuals from society.

First, although the Act provides that the sexually dangerous person be committed to the DOC, as opposed to the Department of Human Services, we believe that the care and treatment provided by either agency will be substantially the same. Under both acts, the DOC and the Department of Human Services are respectively obligated to provide care and treatment that are designed to effect the individual's recovery. 725 ILCS 205/8 (West 1996); 725 ILCS 207/40(a), (b)(2) (West Supp. 1997).

Second, although the Act does not expressly provide that the DOC treat the person in the "least restrictive manner" possible, the defendant is incorrect when he asserts that the Act automatically requires commitment to the DOC without consideration of less restrictive alternatives. See *Oetgen*, 269 Ill. App. 3d at 1006. Section 8 of the Act provides the DOC with a number of alternatives to consider in determining how best to provide care and treatment to the sexually dangerous person. 725 ILCS 205/8 (West 1996). The Director may place the individual in any DOC facility set aside for the care and treatment of sexually dangerous persons, but he also may request that the person be placed in the care of any other state department or agency, such as the Department of Human Services. *Oetgen*, 269 Ill. App. 3d at 1006. Additionally, upon petition, the sexually dangerous person may be conditionally released according to those terms prescribed by the trial court. 725 ILCS 205/9 (West 1996).

Third, although the Act does not mandate the giving of periodic psychiatric examinations and the reporting of the results of such examinations to the trial court, a sexually dangerous person may nonetheless initiate a similar procedure by filing an application for recovery with the trial court. Upon the filing of such an application, section 9 of the Act requires the preparation of a socio-psychiatric report concerning the individual by the psychiatrist, sociologist, psychologist, and warden of the institution where the applicant is confined. 725 ILCS 205/9 (West 1996). The sexually dangerous person may also request the appointment of an independent psychiatrist to assist in the recovery hearing, as occurred in the instant case. The trial court is then obligated to conduct a hearing to assess whether the individual remains sexually dangerous and whether he may be discharged or placed on conditional release. 725 ILCS 205/9 (West 1996). Also, as discussed above, the trial court has the authority to review the care and treatment provided to the individual in order to ensure that the DOC is fulfilling its statutory obligations.

In conclusion, we do not believe that the Act treats sexually dangerous persons more harshly than those committed under the Sexually Violent Persons Act. Rather, we believe that both statutes are rationally tailored to achieve their dual objectives to provide treatment and to protect the public from sexual violence. See *Pembrock*, 62 Ill. 2d at 322; *McVeay*, 302 Ill. App. 3d at 968. We therefore reject the defendant's equal protection challenge.

We also reject the defendant's due process challenge. The legislature may only interfere with an individual's liberty interests if the interference is reasonably related to the alleviation of certain evils that the legislature has identified as threats to the public health,

safety, and general welfare. *People v. Reed*, 148 Ill. 2d 1, 11 (1992). As noted by our supreme court in *Pembrock*, " 'society has a substantial interest in the protection of its members from dangerous deviant sexual behavior.' " *Pembrock*, 62 Ill. 2d at 322, quoting *Stachulak*, 520 F.2d at 937. As detailed above, Illinois courts have repeatedly held that proceedings under the Act are reasonably related to this substantial public interest and do not violate due process. See *Pembrock*, 62 Ill. 2d at 322; *McVeay*, 302 Ill. App. 3d at 968; *Sly*, 82 Ill. App. 3d at 748.

### III. Conclusion

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and RAPP, JJ., concur.