2015 IL App (2d) 141245
No. 2-14-1245
Opinion filed September 30, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 93-CM-4621 |
| RICHARD KASTMAN, | ) ) | |
| Defendant-Appellee | ) ) | |
| (Gladyse C. Taylor, Director, Department of Corrections, Intervenor-Appellant). | ) ) ) | Honorable David P. Brodsky, Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1993, Richard Kastman was charged with a misdemeanor sex offense and the State's Attorney sought his indefinite civil commitment under the Sexually Dangerous Persons Act (the SDP Act) (725 ILCS 205/1.01 *et seq.* (West 2012)). Kastman has six prior convictions, all for sex crimes. In 1994, he was found to be a sexually dangerous person and placed under the guardianship of the Director of the Illinois Department of Corrections (the Department or DOC), who must safely provide care and treatment "designed to effect recovery." 725 ILCS 205/8

(West 2012). Kastman has resided at Big Muddy Correctional Center in Ina, a facility for sex offenders, ever since.

¶ 2    During commitment, any person may file a petition "before the committing court" alleging that the sexually dangerous person is no longer sexually dangerous, thereupon triggering a recovery hearing to prove the point. 725 ILCS 205/9 (West 2012). If the applicant prevails at the recovery hearing, the sexually dangerous person may be conditionally released or discharged; if not, he or she will be remanded to the Director's care for further treatment. *Id.*

¶ 3    In *People v. McDougle*, 303 Ill. App. 3d 509 (1999), this court held that it was implicit in the SDP Act that sexually dangerous persons may "seek judicial review of the adequacy of the care and treatment being provided to them by the DOC" in the circuit courts of this state. *Id.* at 517. A separate portion of the opinion concerning the burden of proof in recovery proceedings (*id.* at 519) was abrogated in *People v. Trainor*, 196 Ill. 2d 318, 335 (2001), but our holding concerning the judicial review of treatment was not affected.

¶ 4    In this case, the trial court certified a question for our review, essentially asking *which* circuit court should conduct *McDougle* proceedings—the circuit court that committed the offender or the circuit court in the county where the offender is committed. As we explain, such proceedings should occur in the committing court.

¶ 5                               I. BACKGROUND

¶ 6    Related to his commitment, Kastman has been diagnosed with pedophilia, antisocial personality disorder, exhibitionism, and alcohol dependency. In 2012, after his bid for conditional release was denied (which we affirmed in *In re Detention of Kastman*, 2015 IL App (2d) 130314-U), Kastman filed a motion to compel the Director to provide him with treatment for alcohol abuse. He alleged that his alcoholism had gone untreated since his commitment in

1994, exacerbated his underlying psychosexual disorder, and prevented his recovery. Kastman cited our decision in *McDougle* as authority. The Director intervened and represented to the court that DOC did not have a program specifically for the treatment of alcohol abuse, but did have a generic program for substance abuse (which Kastman had already completed). After a hearing, at which the Director declined to present evidence, the trial court ordered the Director to provide Kastman with an individualized assessment and further substance abuse treatment. The Director appealed that decision to this court, but then moved to dismiss the appeal, which we allowed. *In re Detention of Kastman*, No. 2-13-1235 (Feb. 5, 2014) (minute order).

¶ 7    Following the partial success of his motion concerning substance abuse treatment, Kastman filed a motion asking the court to review his sex offender treatment. According to the motion, there had been an "exodus" of Big Muddy's treatment staff, leaving only three therapists to tend to the approximately 175 sexually dangerous persons at the facility. Kastman alleged that the Director failed to maintain an appropriate ratio of treatment providers to offenders in sex offender group therapy sessions and, further, failed to provide him with treatment designed to address arousal control and victim empathy in conformance with the Department's guidelines. See 20 Ill. Adm. Code 1905.300(e), (g) (2009).

¶ 8    The Director filed a response asking the trial court to strike or deny Kastman's motion concerning sex offender treatment. According to the Director, this court's decision in *McDougle* was inapplicable to her because her office was not made a party in *McDougle.* The Director further argued that, because she was not "bound" by our decision in *McDougle*, "venue" was not proper in the circuit court of Lake County. Instead, she asserted, Kastman's only avenue of relief in state court was to commence a separate *mandamus* action or federal civil rights action (42

U.S.C. § 1983 (2012)) in the circuit court of the county where he is confined (in this case, Jefferson County).

¶ 9    The trial court rejected the Director's arguments and refused to dismiss Kastman's motion. The court found that it was obliged to follow *McDougle* as a decision of the appellate court and that, pursuant to *McDougle*, it could review the adequacy of Kastman's treatment under the Director's guardianship. The Director then presented the following question of law, which the trial court certified for our review:

> Per *McDougle*: "Is the proper method of obtaining [judicial] review to file a
> motion in the commitment proceedings—in which the Director of the IDOC is not a
> named party—or to file a separate action against the Director in the circuit court located
> in the county where the SDP resides?"

We granted leave to appeal. Ill. S. Ct. R. 308 (eff. Jan. 1, 2015).

¶ 10                                II. ANALYSIS

¶ 11    Certified questions present issues of law, which we review *de novo*. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009). On the certified question, the Director presents the same arguments to this court that were considered and rejected by the trial court. Although in this appeal we are not directly reviewing the trial court's ruling on the Director's motion to dismiss, as we explain, the Director's arguments fare no better here.

¶ 12    Our analysis begins with *McDougle*. There, McDougle, a sexually dangerous person at a DOC facility, filed a recovery petition in the committing court. *McDougle*, 303 Ill. App. 3d at 511. The petition sought McDougle's conditional release or discharge; in the alternative, it sought to have McDougle transferred to a facility run by the forebear to the Department of Human Services (DHS) (which oversees the treatment of those committed under the Sexually

Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1996))), which he alleged was more conducive to his psychiatric treatment and recovery. *McDougle*, 303 Ill. App. 3d at 511, 515. The petition was opposed by the county State's Attorney. *Id.* at 511. The trial court found that it did not have the authority to review McDougle's treatment or to order the Director of DOC to transfer McDougle to a DHS facility. *Id.* at 514. It also found that McDougle had failed to establish his recovery. *Id.*

¶ 13    On McDougle's appeal, this court found that the trial court was incorrect concerning the scope of its authority. We held the following:

> "In light of the significant liberty interest at stake, we believe that due process requires that sexually dangerous persons must be provided the opportunity to seek judicial review of the adequacy of the care and treatment being provided to them by the DOC. We believe that such review is necessary in order to ensure that the DOC fulfills its statutory obligation to provide treatment designed to effect recovery. To hold otherwise would deprive the defendant of his only means to challenge the propriety of the treatment decisions being made by the DOC." *Id.* at 517.

¶ 14    We further stated that "without the power of [judicial] review, there is no way to guarantee that the defendant will receive *any* treatment from the DOC." (Emphasis in original.) *Id.* Thus, we cautioned, there is a very real danger that SDP Act commitment could become a pre-trial "warehousing operation for social misfits." (Internal quotation marks omitted.) *Id.* at 518.

¶ 15    Following our conclusion concerning judicial review, we noted that the State conceded at oral argument that it was implicit in the recovery-hearing process in section 9 of the SDP Act (725 ILCS 207/9 (West 2012)) that a sexually dangerous person had the right to petition the

circuit court to review the adequacy of his or her treatment. *McDougle*, 303 Ill. App. 3d at 517. In the concluding paragraph of this section, we emphasized that at any review "the sexually dangerous person bears the burden of demonstrating that he is not being afforded treatment designed to effect his recovery as required under [the SDP] Act." *Id*. at 518. (We also affirmed the trial court's decision to deny McDougle's recovery petition (*id*. at 519), though, as noted earlier, that decision was made under the recovery-hearing framework that was abrogated in *Trainor*.)

¶ 16    The Director concedes that *McDougle* "correctly" holds that sexually dangerous persons have the right to seek judicial review. But she argues that she is not "bound" by "that part of *McDougle* holding that the proper route to seek such review is by means of a motion filed within the commitment proceedings." The Director makes several points in support of her position, but we need not consider them.

¶ 17    The problem with the Director's argument is that our decision in *McDougle* did not address what "route" a sexually dangerous person should take to seek judicial review, or where "venue" is most appropriate to conduct a *McDougle* proceeding. That is, in *McDougle*, we held that "the circuit courts of this state have the power to review the care and treatment administered by the DOC" (*id.* at 516), but we did not directly state where that review should occur. We granted leave to appeal in this case to clarify that a *McDougle* proceeding should take place in the circuit court that committed the offender.

¶ 18    Under the SDP Act, which has not been materially amended since our decision in *McDougle*, both commitment and recovery proceedings take place in the committing court. 725 ILCS 205/5, 8 (West 2012); see also 725 ILCS 205/9 (West 2012) (stating that a recovery petition must be filed "before the committing court"). Although not cited in *McDougle*, we find

instructive our supreme court's decision in *People v. Cooper*, 132 Ill. 2d 347 (1989). There the court held that the expiration of a sexually dangerous person's conditional release order did not terminate his commitment. *Id.* at 354. Rather, the supreme court said, "a sexually dangerous person remains under the jurisdiction of the court which initially committed him until that court expressly finds that he is not sexually dangerous." *Id.* at 355. Given that, under the SDP Act, commitment and recovery proceedings occur in the committing court, and that, under *Cooper*, a sexually dangerous person remains under the jurisdiction of the committing court until recovered, we believe that the committing court is in the best position to review the adequacy of the Director's treatment of a sexually dangerous person.

¶ 19     It is also significant that, as in this case, recovery proceedings may go on for years at a time. The committing court is, therefore, apt to be familiar with the parties and the issues in ways that no other court would be. Accordingly, given that every significant legal event in the commitment, recovery, and discharge of a sexually dangerous person occurs in the committing court, we believe that it would be a tremendous waste of judicial resources to conduct a *McDougle* proceeding anywhere else. See *De Bouse*, 235 Ill. 2d at 558 (when answering a certified question, courts should consider "judicial economy and the need to reach an equitable result").

¶ 20     Furthermore, we note that the legal relationship between the Director and a sexually dangerous person is created in the committing court's initial commitment order. See 725 ILCS 205/8 (West 2012). Thus, while the Director may be a sexually dangerous person's guardian, a sexually dangerous person remains, until recovered (*Cooper*, 132 Ill. 2d at 355), a ward of the committing court. It is axiomatic that the committing court may enter any order necessary to enforce its commitment order. See *In re Baker*, 71 Ill. 2d 480, 484 (1978) (courts are vested with

the inherent power to enforce orders through contempt proceedings). Courts also have an independent duty "not limited to express statutory terms" to supervise appointed guardians and "to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm." *In re Mark W.*, 228 Ill. 2d 365, 375 (2008). If, as Kastman alleged, his treatment was not adequately designed to effect his recovery, then the harm to him is manifest. See *Allen v. Illinois*, 478 U.S. 364, 370 (1986) (rejecting constitutional challenge to the SDP Act, based in part on the State's assertion that sexually dangerous persons would be "released after the briefest time [possible] in confinement"). We therefore hold that, under *McDougle*, "the proper method of obtaining judicial review [is] to file a motion in the commitment proceedings" in the committing court.

¶ 21    Before concluding, we briefly note and reject some of the Director's assertions. The Director states that filing a separate action in the circuit court in the county of confinement would: (1) likely be more time- and cost-effective for transporting sexually dangerous persons and treatment staff as witnesses; (2) "reduce[ ] the chances of an SDP escaping *en route* or upon his return"; and (3) ensure that the Director would receive notice as a "named party," making the case more consistent with the way such cases are often captioned in the circuit court (*e.g.*, *Kastman v. Taylor*, as opposed to *People v. Kastman*). Our task, however, is not to determine what is most convenient for the Director; it is to answer the trial court's certified question consistent with the law.

¶ 22    It suffices to say that the trial court (here, the committing court) is in the best position to determine whether and how the presence of witnesses should be secured in a *McDougle* proceeding. See 735 ILCS 5/10-135 (West 2012); *People v. Collins*, 249 Ill. App. 3d 924, 927 (1993). We are also ill-suited to address the Director's concerns regarding transportation costs.

See, *e.g.*, *Trainor*, 196 Ill. 2d at 342 ("Although we recognize the impact of the [SDP] Act on the State's resources, this is a legislative matter that we must leave for the General Assembly to address."). Nothing, however, precludes the appropriate use of alternative methods of receiving evidence to minimize transportation time and costs, such as the use of affidavits in place of live testimony, or the use of video conferencing.

¶ 23    As to security in the event of transportation, we note that the Director's last annual report to the General Assembly states that during fiscal year 2014 the Department securely transported 43,289 offenders and 3,877 officers, or an average of 832 offenders and 75 officers each week. Illinois Department of Corrections, *Fiscal Year 2014 Annual Report*, 17 (2014), https://www.illinois.gov/idoc/reportsandstatistics/Documents/FY2014%20Annual%20Report.pdf. Meanwhile, during that same year, sexually dangerous persons accounted for only 180 prisoners, or less than 0.4% of the DOC's 48,921 total prisoners. *Id*. at 64. We further note that in the trial court the Director offered no evidence that sexually dangerous persons in general, or Kastman in particular, present a heightened risk of escape.

¶ 24    Finally, the Director's concerns regarding notice and the case caption are overstated. From what we can tell from the limited record before us, the Director was able to successfully intervene in the alcohol-treatment portion of this case despite not having initially been a "named party," and has remained involved ever since. Neither party, however, has addressed whether the Director was a necessary party below, nor whether the State's Attorney, who may prosecute a sexually dangerous person's commitment and defend against his or her release, is in privity with the Director in an action to review the adequacy of the Director's treatment. This is an issue on which reasonable minds could differ (see, *e.g.*, *People v. Keys*, 324 Ill. App. 3d 630, 638 (2001);

*id*. at 638-39 (Steigmann, P.J., dissenting)) and on which, in the absence of developed arguments, we express no opinion.

¶ 25                          III. CONCLUSION

¶ 26    In light of the foregoing, we determine that, under *McDougle*, the judicial review of the adequacy of a sexually dangerous person's treatment should occur in the committing court. This cause is remanded to the trial court for further proceedings consistent with this opinion.

¶ 27    Certified question answered; cause remanded.