# Illinois Official Reports

## Appellate Court

---

## *People v. Kastman*, 2021 IL App (2d) 210158

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. RICHARD KASTMAN, Defendant-Appellee (Rob Jeffreys, in His Official Capacity as Director of Corrections, Intervenor-Appellant). |
| District & No. | Second District<br>No. 2-21-0158 |
| Filed | August 19, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 93-CM-4621; the Hon. Theodore S. Potkonjak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for appellant.<br><br>John W. Radosevich, of Law Offices of David R. Del Re, P.C., of Waukegan, for appellee. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice McLaren concurred in the judgment and opinion.


**OPINION**

¶ 1     In 1994, defendant, Richard Kastman, was committed to the guardianship and custody of the director of the Department of Corrections (IDOC) under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 1994)). After his conditional release, Kastman sought, and the trial court granted, an injunction compelling the director of IDOC, Rob Jeffreys (Director), to pay, in part, for Kastman's sex offender treatment and housing. The Director appeals and asserts that the trial court lacked the statutory authority to order him to pay for any of Kastman's expenses, as he has been conditionally released. For the reasons that follow, we affirm.

¶ 2                              I. BACKGROUND
¶ 3     In 1993, Kastman was charged with numerous acts of public indecency involving children and with disorderly conduct. Kastman had six prior convictions, all for sex crimes. The State subsequently sought, and the trial court ordered, his commitment pursuant to the Act. Relevant here, at the proceedings it was determined that Kastman suffered from pedophilia, antisocial personality disorder, exhibitionism, and alcohol dependency.

¶ 4     Kastman was committed to the Director's custody and placed in Big Muddy Correctional Center, a facility largely for sex offenders. Over the years, Kastman variously petitioned the trial court for his release or for review of his treatment. See *People v. McDougle*, 303 Ill. App. 3d 509, 518 (1999) (holding that sexually dangerous persons may seek judicial review of whether treatment was adequately "designed to effect [their] recovery"). In 2013, the trial court (Judge Thomas Schippers) ordered that Kastman receive additional alcohol-specific treatment. Subsequently, the Director asserted that the trial court lacked the statutory authority to hear Kastman's treatment petition, and that venue was proper in the circuit where Big Muddy was located (Jefferson County). We disagreed with the Director's position and explained that the court that committed Kastman pursuant to the Act was responsible for monitoring the Director's guardianship and, ultimately, was responsible for Kastman's wardship. See *People v. Kastman*, 2015 IL App (2d) 141245.

¶ 5     After our decision, in 2016, the parties returned to the trial court (Judge David Brodsky) and an agreed order was entered for Kastman's conditional release. The order contained the stipulated testimony of two evaluators who opined that, within a reasonable degree of psychological certainty, Kastman appeared to be "no longer sexually dangerous within the institutional parameters." Per the order, the trial court found that Kastman "appear[ed]" to no longer be sexually dangerous but that it was "impossible to determine with certainty under the conditions of institutional care that he has fully recovered *** pursuant to 725 ILCS 205/9(e)." Kastman was permitted to go at large subject to conditions including alcohol and illegal drug use testing and GPS monitoring (commonly known as a "SCRAM bracelet" although it is

really an anklet) and outpatient sex offender treatment. The order also stated that Kastman "shall become self-supporting," "shall actively seek employment" or pursue a course of study, and "shall pay all monthly living expenses and comply with Parole and Probation in developing a budget." And, finally, the order provided that all conditions were subject to periodic review and modification by the committing court on either party's motion.

¶ 6        In 2020, Kastman filed a motion seeking financial assistance from the Director, as Kastman's guardian. The motion stated that Kastman had obtained housing compliant with the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2018)) but also stated that he was unemployed, disabled, and could not afford his $1800 monthly rent and $300 monthly treatment costs.

¶ 7        The Director filed a petition to intervene—citing his role as Kastman's "court-appointed guardian"—which the trial court (Judge Theodore Potkonjak) granted. The Director then filed a motion to dismiss stating that, while he "does not deny his guardianship of [Kastman]," he was not financially responsible for Kastman because the conditional release order stated that Kastman would pay for his own monthly expenses. Further, the Director argued that he had no continuing duty to provide for Kastman's housing and treatment as Kastman was no longer in an institutional setting.

¶ 8        The Director also acknowledged an unpublished, split decision of the First District Appellate Court, *People v. Ford*, 2019 IL App (1st) 172592-U, which held that the Director was required to pay for "care and treatment" for a conditionally released sexually dangerous person; however, the Director asserted that the decision was incorrect and noted that as an unpublished decision *Ford* was not binding on the trial court. In a reply, Kastman clarified that he was seeking a modification of the terms of his conditional release.

¶ 9        After hearing arguments, the trial court granted Kastman's motion. The court stated that, while it was not bound by the decision in *Ford*, it nevertheless found the majority's interpretation of the Act persuasive. The court received evidence concerning Kastman's living expenses, which added up to approximately $2900 per month and included $310 per month for his SCRAM bracelet and $360 per month for sex offender treatment. The court assessed Kastman's ability to pay, and it ordered him to contribute $500 toward his expenses. The Director appealed.

¶ 10                                   II. ANALYSIS

¶ 11        On appeal, the Director contends that the trial court lacked the authority under the Act to enjoin him to pay for Kastman's care and treatment during his conditional release. The Director takes no position on the amount he was ordered to pay; rather, the Director's position is that the Act did not permit the court to order him to contribute anything. Whether the Act permits a court to grant such relief is a question of law, which we review *de novo. People v. Howard*, 2017 IL 120443, ¶ 19.

¶ 12        As an initial matter, we note that Kastman asserts that the Director has conceded the issue before this court. Kastman points out that the Director intervened on the basis that he was Kastman's guardian and that therefore he should be bound by that as a judicial admission or, in the alternative, that any error in the trial court's order was invited. We disagree with Kastman's assessment. Strictly speaking, this case is not about whether the Director is Kastman's guardian; rather this case is about *the scope* of the Director's responsibilities as a

sexually dangerous person's guardian. The Director has preserved that issue for review, and there is no need to base our decision today on waiver or estoppel.

¶ 13    For background, we note that sexually dangerous persons are adjudged as suffering from a mental illness for at least one year. 725 ILCS 205/1.01 (West 2018). Thus, the Act reflects the legislature's intent that sexually dangerous persons, "instead of being criminally punished for their criminal sexual offenses, [are] committed to the Department of Corrections *for treatment* until they are no longer considered sexually dangerous, and then discharged." (Emphasis added.) *People v. Cooper*, 132 Ill. 2d 347, 355 (1989). Accordingly, the Act's ultimate "aim" is "treatment, not punishment." *People v. Allen*, 107 Ill. 2d 91, 100-01 (1985), *aff'd*, 478 U.S. 364 (1986).

¶ 14    This case turns on our construction of two sections of the Act—sections 8 and 9(e). Section 8, which is entitled "Director of Corrections as [G]uardian," provides in relevant part as follows:

> "If the respondent is found to be a sexually dangerous person then the court shall appoint the Director of [IDOC] guardian of the person found to be sexually dangerous and such person shall stand committed to the custody of such guardian. The Director of [IDOC] as guardian shall keep safely the person so committed until the person has recovered and is released as hereinafter provided. The Director of [IDOC] as guardian shall provide care and treatment for the person committed to him designed to effect recovery. *** The Director may place that ward in any facility in [IDOC] or portion thereof set aside for the care and treatment of sexually dangerous persons." 725 ILCS 205/8 (West 2018).

¶ 15    Section 9(e) provides that, if the trial court finds that the committed person no longer appears to be dangerous, but "it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered," the court "shall enter an order permitting the person to go at large subject to the conditions and supervision by the Director as in the opinion of the court will adequately protect the public." *Id.* § 9(e). However, "[i]f the person is found to be no longer dangerous, the court shall order that he or she be discharged." *Id.*

¶ 16    Based on the foregoing, the Director maintains that his duty to provide care and treatment for sexually dangerous persons as their guardian "under section 8 extends only to those individuals who are committed to his custody in an institutional setting." Thus, according to the Director, he has no responsibility to sexually dangerous persons on conditional release at all. The Director further suggests that, to the extent that the trial court's order is "construed as modifying the terms of Kastman's conditional release under section 9(e) of the Act," the order should be overturned because section 9(e) does not specifically provide for the court to order the Director to pay for Kastman's "living expenses." We disagree with the Director's position.

¶ 17    The duties of the Director, as guardian for a sexually dangerous person, include providing "care and treatment" for the person, and the Director must "keep safely" the person committed to him "*until the person has recovered* and is released." (Emphasis added.) *Id.* § 8. A sexually dangerous person who has been conditionally released has of course been released but has *not* been considered to have recovered. The Act recognizes that conditional release may be a step toward recovery when it is "impossible to determine with certainty under the conditions of institutional care that the person *has fully recovered*." (Emphasis added.) *Id.* §§ 9(e), 10. Thus, a person who has been conditionally released has *not* been considered to have recovered and has not been discharged; therefore, the Director remains the guardian of a conditionally

released sexually dangerous person, and the Director is obliged to provide "care and treatment" designed to effect his ward's recovery and to keep his ward safe.

¶ 18 Our interpretation of the Act is consistent with our supreme court's holding that a conditionally released sexually dangerous person "remains under the jurisdiction of the court which initially committed him until that court expressly finds that he is not sexually dangerous." *Cooper*, 132 Ill. 2d at 355. Furthermore, in *Cooper*, our supreme court differentiated between an order for conditional release on one hand, and "an order discharging defendant from the supervision of the Department of Corrections or from the jurisdiction of the trial court" on the other. *Id.* at 354. This distinction further clarifies that the Director's guardianship extends to conditionally released sexually dangerous persons and is not limited solely to those in IDOC custody.

¶ 19 Kastman has been conditionally released, but he remains a ward of the court, and he remains subject to the Director's guardianship and supervision. Kastman is, in essence, on a string that the Director may pull, acting as an agent of the State, whenever Kastman violates the conditions of his release. See generally *People v. Martin-Trigona*, 111 Ill. 2d 295, 300 (1986). The goal of conditional release, like all procedures under the Act, is to aid in a sexually dangerous person's recovery. Accordingly, Kastman's conditional release does not negate the Director's obligation to provide Kastman with "care and treatment" (725 ILCS 205/8 (West 2018)), and does not deprive the court of jurisdiction to review the adequacy of the care and treatment the director provides. while Kastman is on conditional release (see *McDougle*, 303 Ill. App. 3d at 518), or to modify the terms of Kastman's release subject to the court's discretion (725 ILCS 205/9(e) (West 2018)); see also *Kastman*, 2015 IL App (2d) 141245, ¶ 20 (holding that, although the Director is the committed person's guardian, that person "remains, until recovered [citation], a ward of the committing court").

¶ 20 The Director also observes that there is no provision in the Act that dictates he must provide financial assistance for conditionally released sexually dangerous persons, but that observation helps us little. Even the most comprehensive legislation cannot exhaustively define each object it seeks to address. What is more compelling is that the Act frequently uses the term "guardian" to describe the Director's relationship to his ward, and guardianship is a paradigmatic legal and judicial relationship that involves the court, the guardian (who acts as the hand of the court), and the ward. The legislature, of course, knows how to provide for limited guardianship in certain contexts; however, in contrast to the Act, other statutes do not require that guardians appointed under those acts devote themselves to their ward's treatment or recovery. See 755 ILCS 5/11a-17 (West 2018) (duties of guardian of the person); *id.* § 11a-18 (duties of guardian of the estate); 20 ILCS 3955/32 (West 2018) (providing that the State Guardian shall have the same powers and duties as a private guardian as provided in the Probate Act of 1975). In addition, this court and others have held that the Director is the proper source for payment for a sexually dangerous person's necessary expenses, including attorney fees. See *People v. Carter*, 392 Ill. App. 3d 520, 525-26 (2009); *People v. Downs*, 371 Ill. App. 3d 1187, 1189-91 (2007); *People v. Wilcoxen*, 358 Ill. App. 3d 1076, 1078-79 (2005). In the time since these holdings, the General Assembly has not amended the Act to prohibit such payment, which indicates that this interpretation is consistent with its original intent. See *Downs*, 371 Ill. App. 3d at 1191. All of this convinces us that the legislature envisioned a unique form of guardianship and fiduciary responsibility under the Act.

¶ 21   We note too that the cost of Kastman's conditional release appears to be less expensive than the cost of his confinement. According to IDOC, the cost of incarcerating an individual in an IDOC facility during Fiscal Year 2020 was $34,362. See Ill. Dep't of Corr., Financial Impact Statement FY 20, https://www2.illinois.gov/idoc/reportsandstatistics/Documents/FY 20%20Financial%20Impact%20Statement.pdf (last visited June 30, 2021) [https://perma.cc/ L8ZL-2Z5N]. While we could not locate data on the average costs of confining sexually dangerous persons specifically and providing for their in-custody treatment, it stands to reason that it costs more to house such individuals.

¶ 22   As we have noted before, "[c]ourts *** have an independent duty 'not limited to express statutory terms' to supervise appointed guardians and 'to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm.' " *Kastman*, 2015 IL App (2d) 141245, ¶ 20 (quoting *In re Mark W.*, 228 Ill. 2d 365, 375 (2008)). Similarly, a guardian's inaction may cause harm as well. The Director appears to have accepted that Kastman is disabled and cannot work, but if Kastman were unable to attend sex offender treatment because he could not afford it, or could not find suitable housing, or lacked electricity to charge his SCRAM bracelet, then he will have blamelessly violated the conditions of his release. His inability to pay for his day-to-day expenses should not result in his (potentially indefinite) recommitment to custody. If the Director wishes not to be responsible for Kastman in such a way, he should make every effort to see that Kastman is not merely released but has truly recovered.

¶ 23                               III. CONCLUSION

¶ 24   Once again, we reiterate that "[t]he treatment of sexually dangerous persons is a serious and sensitive undertaking." *People v. Conley*, 2020 IL App (2d) 180953, ¶ 13. Sexually dangerous persons have been adjudged mentally disabled and are wards of the court and of the Director until they have recovered. In such a setting, "a person's legal guardian"—in this case, the Director—"is the correct source of payment for the person's essential expenses" (*Wilcoxen*, 358 Ill. App. 3d at 1078) until they have recovered and are discharged. We determine that the trial court's order was sufficiently authorized by statute and appropriately tailored to the circumstances. Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 25   Affirmed.