2023 IL App (1st) 231801B

SECOND DIVISION
December 8, 2023

No. 1-23-1801B

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff -Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 23 C 33021401 |
| | ) | |
| ALBA HERRERA, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     In two public acts, the legislature passed the Safety, Accountability, Fairness and Equity-Today Act (SAFE-T Act), which "comprehensively overhauled many aspects of the state's criminal justice system." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4. Among the many changes, the Act "dismantled and rebuilt Illinois's statutory framework for pretrial release of criminal defendants." *Id.*

¶ 2     Most dramatic was the Act's abolition of monetary bail, which the General Assembly replaced with a default rule that all persons charged with an offense would be eligible for pretrial release. *Id.* at ¶ 5; 725 ILCS 5/110-2(a) (West 2022). But the Act also contained provisions allowing the trial court to impose conditions on that release or, in specific circumstances, deny it

altogether. See 725 ILCS 5/110-6.1, 110-10 (West 2022).

¶ 3     After surviving a constitutional challenge, the pretrial release provisions of the Act took effect on September 18, 2023. *Rowe*, 2023 IL 129248, ¶ 52. Defendant here, Alba Herrera, was arrested for driving a car under the influence of alcohol before the Act went into effect. If convicted, it would be her fourth DUI conviction. The trial court originally set her bond at $50,000 "D," requiring her (or someone on her behalf) to deposit 10 percent of the total bond ($5,000) to secure her release. If she did post the money and was released from custody, the court ordered her to be placed on electronic monitoring.

¶ 4     After the Act went into effect, defendant petitioned the court to be released under the new statutory framework. After a hearing, the court concluded that defendant was a danger to the community, and that no set of conditions could mitigate that danger such that she could be released. The court thus ordered defendant detained.

¶ 5     Defendant appeals, arguing that the court erred in concluding that no set of pretrial release conditions could have mitigated the danger defendant posed. For the reasons that follow, we vacate and remand for a new detention hearing.

¶ 6                               BACKGROUND

¶ 7     Defendant was arrested in July 2023, before the amendments to the pretrial detention system went into effect. At that time, the circuit court ordered defendant held on a $50,000 "D" bond, meaning she would need to post $5,000 to be released. The court also ordered that, if she posted the bond and was released, defendant would be placed on electronic monitoring.

¶ 8     After our supreme court ruled in *Rowe* and the new pretrial system took effect, defendant petitioned the court to reconsider her release. The circuit court then held a new hearing under the amended pretrial detention statute.

¶ 9 At that hearing, the State proffered that, on July 23, 2023, at around 12:30 pm in the afternoon, police responded to a report of a reckless driver in the area of Irving Park Road and Scott Street in Schiller Park. Police eventually pulled over a red Nissan with the defendant behind the wheel. After the defendant pulled over, she stopped her car, then reversed and backed into the police cruiser that had curbed her.

¶ 10 Another officer arrived on the scene and met with defendant. That officer noticed she had bloodshot, glossy eyes and a "strong odor of alcohol" coming from her breath. When the officer asked defendant for her license, she refused to give him one. At the time, she did not have a valid driver's license.

¶ 11 The officer asked defendant to step out of the car and perform roadside sobriety tests. Officers noticed that defendant could not keep her balance when she walked. After taking the tests, police arrested her and took her back to the Schiller Park police department. There, she took a breathalyzer test, which registered a blood alcohol content of .250.

¶ 12 The State charged defendant with aggravated driving under the influence based on her criminal background, which included three prior convictions for DUI, two in 2017 and one in 2019. Because of her background, the aggravated DUI charge was enhanced to a non-probationable class 2 felony, with a minimum sentence of three years in prison.

¶ 13 Defense counsel proffered that his client was 65 years old and suffered from mental health and substance abuse issues; keeping her in custody was "not the right thing to do." Counsel suggested the court place her on a Secure Continuous Remote Alcohol Monitor (SCRAM) bracelet with "zero tolerance" for any alcohol use as a condition of her release. However, the trial court quickly stated, "I don't have the authority to do that under the [Pretrial Fairness Act]."

¶ 14   Defense counsel then suggested his client be placed on electronic home monitoring with no allowance for movement, including no driving whatsoever. He reiterated his client was of limited financial means—which is why she was never able to post the $5,000 original cash bond. Her criminal history was without violence, and counsel believed that, with a form of electronic monitoring and other conditions, any danger defendant posed could be mitigated.

¶ 15   The court concluded that the State had shown, by clear and convincing evidence, that the "proof is evident and the presumption great" that the defendant committed the charged offense, that she posed a real and present threat to the safety of the community because she continued to drink and drive even without a license, and that there were no conditions of release that could protect the safety of the community. Responding to defendant's request for electronic monitoring, the court said it "could not find that electronic home monitoring would be the magic wand that all of a sudden [would] allow her to conform to the law[.]"

¶ 16   The court ordered defendant detained and revoked any previous pretrial release conditions. This appeal follows.

¶ 17                              ANALYSIS

¶ 18   Under the Act, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (West 2022). But in certain limited circumstances, the court may detain the defendant either because (1) the defendant poses a real and present threat to the safety of any person or persons or the community; or (2) the defendant has a high likelihood of willful flight to avoid prosecution. 725 ILCS 5/110-6.1(a) (West 2022).

¶ 19   To detain a defendant before trial, the defendant must first be charged with an offense for which pretrial release may be denied, as specified in the statute. 725 ILCS 5/110-6.1(a)(1)-(8) (West 2022). The State must then file a verified petition asking the court to detain the defendant.

*Id.* § 110-6.1(a). The petition must state the grounds upon which the State believes the defendant should be denied release, including specific and articulable facts showing the real and present threat to the safety of any person or person or the community, or specific and articulable facts as to why the defendant is a flight risk. *Id.*

¶ 20    To overcome the presumption that the defendant will be released, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety or any person or person in the community based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* § 110-6.1(e).

¶ 21    Defendant here does not challenge that she has been charged with a detention-qualifying offense. She does not deny that the proof is evident that she committed the offense. Nor does she challenge the finding that she poses a danger to the community. She challenges only the court's third requisite finding—that no condition or combination of conditions of release could mitigate her danger to the community.

¶ 22    We would ordinarily begin by identifying the standard of review. Under the previous, longstanding regime for bond hearings and appeals therefrom, we reviewed bail and bond decisions for an abuse of discretion. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. Our new regime is obviously markedly different in many respects, so we cannot rely on decisions under the previous version. Still, a decision from a sister district embraced that same abuse-of-discretion standard for reviewing these factual findings, observing that "the Act neither mandates

nor suggests a different standard or review" from that under the previous system. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 23 A decision from yet another district held that the court's findings on the three prerequisites to detention are findings of fact that should be reviewed under the manifest-weight standard. See *People v. Gibbs*, 2023 IL App (5th) 230700-U, ¶ 5. Yet that decision immediately followed up, while noting that the question of dangerousness involves the consideration of multiple statutory factors (see 725 ILCS 5/110-6.1(g) (West 2022)), with the statement that "whether the trial court properly considered one or more of the aforementioned factors in determining dangerousness are reviewed for an abuse of discretion." *Gibbs*, 2023 IL App (5th) 230700-U, ¶ 5.

¶ 24 We expect there is much left to be said about the standard of review. But this is not the case to resolve it. For the reasons stated below, we find that the trial court committed legal error. And legal error is actionable under even the most deferential standard of review. *Seymour v. Collins*, 2015 IL 118432, ¶ 50; *Moore v. Mandell*, 2023 IL App (5th) 220289, ¶ 34; *People v. Hudson*, 2023 IL App (1st) 192519, ¶ 88; *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 46.

¶ 25 At the detention hearing, after some initial discussion about the nature of the offense, defense counsel led off his argument that certain pretrial release conditions would mitigate the danger posed by defendant by referencing the use of SCRAM technology, though the court quickly disposed of that option:

> "[Defense Counsel]: My client is 65 years old. She has no violence in her history whatsoever. I did have several conversations with her, your Honor. She does suffer from mental illness. I believe that this is a contributing factor to these close-in-time DUIs. She

was the victim of a very violent offense. Your Honor, I believe that my client could be placed on a SCRAM bracelet where there's zero tolerance.

THE COURT: I don't have the authority to do that under the PFA.

[Defense Counsel]: Understood, Judge."

¶ 26 Defense counsel next argued that defendant could be placed on electronic home monitoring, a pretrial release condition the previous bond court judge had set. But the court was not moved:

"[T]he Court finds that there are no less restrictive conditions other than detention that would protect the safety of the community. Again, not able to conform her conduct to the law and in the process putting the community's safety at risk. The finding of the Secretary of State that she does not have a valid driver's license did not deter her from driving; did not deter her from drinking and driving in the past. And based on what the State has alleged today and the Court could not find that electronic home monitoring would be the magic wand that all of a sudden allow her to conform her conduct to the law and protect the community in the process, I'm not willing to take that chance and find that the State has met its clear and convincing burden."

The court thus ordered defendant to be detained.

¶ 27 In his notice of appeal, defendant argued that the State failed to prove by clear and convincing evidence that no set of conditions could mitigate the danger posed by defendant:

"If the defendant is placed on electronic home monitoring, her movement would be significantly restricted and would insure that [she] remain at home and not driving. The defendant could be placed on a SCRAM bracelet that would monitor alcohol consumption and the court would be immediately notified of any violations. The

defendant could be ordered to be placed in an in-patient treatment facility. The State did not present facts that the defendant is a flight risk, has previous bond forfeitures or any other reason why she would not comply with the possible conditions of pretrial release."

¶ 28    We agree with defendant that, contrary to the court's statement in open court, the court does have the authority to order, as a condition of pretrial release, SCRAM monitoring, which utilizes "what is commonly known as a 'SCRAM bracelet,' although it is really an anklet." *People v. Kastman*, 2021 IL App (2d) 210158, ¶ 5, *aff'd*, 2022 IL 127681.

¶ 29    As was true before the SAFE-T Act and its related legislation, and as remains true following those acts, the court may impose such pretrial release conditions as placing a defendant "under direct supervision of the Pretrial Services Agency *** in a pretrial home supervision capacity with or without the use of an approved electronic monitoring device subject to Article 8A of Chapter V of the Unified Code of Corrections." 725 ILCS 5/110-10(b)(5) (West 2022); *compare* 725 ILCS 5/110-10(b)(14) (West 2020) (pre-SAFE-T Act provision).

¶ 30    Chapter V, Article 8A of the Corrections Code, in turn, defines "approved electronic monitoring device" as a device that "is primarily intended to record or transmit information as to the defendant's presence or nonpresence in the home, *consumption of alcohol*, consumption of drugs, location as determined through GPS, cellular triangulation, Wi-Fi, or other electronic means." (Emphasis added.) 730 ILCS 5/5-8A-2(A) (West 2022).

¶ 31    SCRAM technology has been used as a condition of release in various settings. See, *e.g.*, *People v. Kastman*, 2022 IL 127681, ¶ 8 (SCRAM monitoring as condition of release of sexually dangerous person who suffered from alcoholism); *People v. Hebert*, 2023 IL App (4th) 230205-U, ¶¶ 5-6 (SCRAM monitoring as condition of release on bond and on probation); *People v. Shiner*, 2022 IL App (4th) 200331-U, ¶ 6 (condition of bond); *People v. Rubini*, 2021 IL App

(2d) 200064-U, ¶ 35 (noting testimony that "SCRAM bracelets test for alcohol every half hour and can detect tampering.").

¶ 32    Based on its comments, the trial court appeared to be under the mistaken impression that it could not, as a condition of pretrial release, require that the defendant wear a SCRAM bracelet (or similar alcohol-monitoring device), when in fact the Code permits it. The court could also require that defendant install "an ignition interlock device" on her vehicle. 7725 ILCS 5/110-10(b)(6) (West 2022). The court could impose any "other reasonable conditions" on the defendant's release (*id.* § 110-10(b)(9)), including regular alcohol testing and requiring defendant to participate in rehabilitative services to address her struggles with alcohol.

¶ 33    So when the court found that the State proved, by clear and convincing evidence, that no set of conditions could mitigate the danger posed by defendant's tendency to drive while intoxicated, the court did not take into account the full constellation of conditions at its disposal—or at least not one of the most obvious ones, SCRAM monitoring.

¶ 34    Or at least that is the best we can discern from this record. Though the court couched its comments in terms of lacking "authority *** under the PFA," which is incorrect, perhaps the court meant that SCRAM monitoring *was not available within the county at present*. If such were the case, it would be essential for us to know as much on review.

¶ 35    That raises a critical point we must emphasize in the early stages of this new mode of detention hearings: We recognize that not every jurisdiction will have every pretrial resource permitted under the Code. If a defendant suggests a release condition as a potential tool to mitigate the danger a defendant poses, and it so happens that this resource is not available within that jurisdiction, it is imperative that courts (and prosecutors) make a record of the fact. Here, for example, when defendant raised the option of SCRAM monitoring, if it is the case that the

county pretrial services cannot presently provide that resource for whatever reason, it is critical that this fact be made a part of the record for the reviewing court.

¶ 36     In any event, given the record before us, we do not reach the merits of the question of adequate pretrial release conditions under subsection (e)(3) of section 110-6.1. By no means are we suggesting that the trial court should reach a different conclusion on remand. But the court should at least consider the option of SCRAM monitoring on remand in the mix of possible pretrial release conditions or make a record explaining why that resource is not available.

¶ 37     The judgment of the circuit court is vacated. The cause is remanded for a new detention hearing. In the interim, defendant shall remain detained subject to her previous bond and other conditions.

¶ 38     Vacated and remanded.

No. 1-23-1801B

---

### *The People of the State of Illinois v. Alba Herrera*,
### 2023 IL App (1st) 231801B

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-C-33021401; the Hon. Marc W. Martin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Nathaniel Bernard, of Bernard Law, P.C., of Bensenville, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney (Douglas Harvath, Assistant State's Attorney, of counsel), of Chicago, for appellee. |

---