2024 IL App (1st) 24-0288-U
Order filed: May 13, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-0288B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24MC1105388 |
| | ) | |
| CORNELIUS GARY, | ) | Honorable |
| | ) | William Fahy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Denial of pretrial release is affirmed, where the circuit court did not err in finding that the State met its burden by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or community posed by defendant.

¶ 2     Defendant, Cornelius Gary, appeals from an order granting the State's petition to deny his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] On appeal, defendant argues that the State

_____

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the

failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community and that the circuit court erred its determination that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. For the following reasons, we affirm.

¶ 3    Defendant was arrested on January 27, 2024, and charged, by felony complaints, with attempted first degree murder and aggravated battery, by discharge of a firearm. The complaints alleged that on January 27, 2024, defendant committed the offense of attempted first degree murder when he "[d]id take substantial step towards committing the offense of Murder in that the defendant did fire a firearm in the direction of the victim several time [*sic*] causing severe damage", and the offense of aggravated battery when defendant, "without legal justification and by the use of a deadly weapon 9MM firearm knowingly and intentionally caused bodily harm to [the victim] multiple times in leg causing critical condition to [the victim]."

¶ 4    On January 29, 2024, the State filed a verified petition to deny defendant pretrial release, pursuant to sections 110-2 and 110-6.1(a)(1.5) of the Code. 725 ILCS 5/110-2, 6.1(a)(1.5) (West 2022). Therein, the State generally alleged that defendant is charged with a detainable offense—attempted murder—and that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no less restrictive conditions would avoid that threat. More specifically, the petition alleged that defendant shot the victim multiple times resulting in various injuries to the victim including,

---

legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

two bullet wounds to the left thigh, one bullet wound to the right thigh, a fractured hip, and a flesh wound to the scrotum. The petition also noted that defendant did not have a Firearm Owners Identification card (FOID) or a Concealed Carry License (CCL).

¶ 5    On that same day, the circuit court held a hearing on the State's petition.

¶ 6    The State proffered that, on January 27, 2024, around 9:50 p.m., police officers responded to a call of a person shot at a residential building located at 343 West Marquette Road, Chicago, Illinois (the building). The victim, 61 years old, told the officers that he had been shot multiple times by defendant.

¶ 7    The victim owned the building and was temporarily staying on the second floor to perform repairs. The victim's son and defendant were living in the one-bedroom apartment on the first floor of the building. The victim's son had subleased a room in his apartment to defendant without the victim's permission. Defendant had been living in the first-floor apartment for approximately eight to nine months. The victim had not received rent from his son or defendant in over a year and was trying to evict them from the premises.

¶ 8    At the time of the incident, the victim had noticed a bedbug near the first-floor apartment. The victim entered the apartment through an unlocked and broken front door and found bedbugs in the living room, which was where his son had been sleeping. Defendant was in the bedroom and told the victim to "get the f*** out." The victim told defendant that he needed to check for bedbugs and attempted to look under the mattress. Defendant grabbed a firearm from underneath a pillow on the bed and told the victim, "I will pop you." Defendant held a gun behind his back and pushed the victim with his other hand. The victim swatted defendant's hand away. Defendant shot the victim numerous times in the leg and groin.

¶ 9 The victim attempted to flee the apartment, fell, and crawled to the corridor of the building. Defendant walked into the corridor, pointed the gun at the victim, and stated "look what you made me do." Defendant went back to his bedroom and the victim crawled toward the second floor. The neighbors called the police. When officers arrived, they made contact with the victim, who was sitting inside on the top of the stairs near the second floor of the building. The victim told officers that he had been shot multiple times by "the guy outside with the bald head."

¶ 10 Defendant was standing outside of the apartment building and identified himself to the police. Officers took defendant into custody and ran his name through "leads," which revealed that defendant did not have a FOID card. Prior to *Miranda* warnings, defendant stated "I was just defending myself."

¶ 11 The victim was transported to the hospital. He sustained a gunshot wound to the groin, a flesh wound to the scrotum, two bullet wounds to his left thigh, one bullet wound to the back of his right thigh, and a fractured hip.

¶ 12 On January 28, 2024, detectives executed a search warrant of the first-floor apartment where detectives recovered a black 40 caliber handgun from a bin in the center of the bedroom. The weapon was loaded with a live round in the chamber and number of live rounds in the magazine.

¶ 13 The State argued that it was clear that defendant committed the crime where the victim told officers that he had been shot by defendant, defendant admitted to the actions by stating that he was trying to defend himself, and the weapon was located in defendant's room.

¶ 14 As to whether defendant posed a real and present threat to the safety of a person or persons or the community, the State highlighted a number of aggravating factors based on the specific and articulable facts of the case. The victim was 61 years old and had not threatened defendant.

Defendant took out a gun and shot the victim multiple times and then stated, "look what you made me do."

¶ 15    As for whether any conditions could mitigate that risk, the State argued that based on the egregiousness of the offense and the high risk that defendant poses to the community in that he acted so violently there were no condition or combination of conditions that could mitigate that risk. The State further argued that defendant showed he could not follow conditions where he was in possession of a gun but did not have a FOID card or a CCL.

¶ 16    An individual from pretrial services spoke as to defendant's pretrial safety assessment (PSA): "New criminal activity one. Failure to appear one. The PSA coincides with supervision and mitigation please." The PSA did not include a violence flag, but recommended "If Released, Maximum Conditions."

¶ 17    In response, defense counsel maintained that the proof was not evident and the presumption was not great that defendant committed the charged offense in that defendant may assert that he acted in self-defense. Defense counsel argued that based on defendant's PSA scores and having no violence flag, defendant was not a clear and present threat to any person or the community.

¶ 18    Defense counsel further argued that the State did not meet its burden of proof that there are no conditions short of detention that could mitigate any possible risk. In mitigation, defense counsel offered that defendant is 35 years old, had no prior arrests, and had never been subject to any court conditions. Defendant is a lifelong resident of Cook County and resides with a roommate. He has one child that does not live with him. He is a high school graduate and studied electric systems for one year. Prior to his arrest, he worked full time "doing facility operation locally." He was an active member of the Army for four years and regularly attends the congregation of Israel.

¶ 19    In rebuttal, as to the conditions factor, the State reiterated that defendant armed himself with a gun without having a FOID card or a CCL and showed that he could obtain a firearm illegally and what harm he could cause with that firearm. The State argued that, if released on electronic monitoring, he could once again obtain a firearm illegally and use it in a similar way.

¶ 20    The court concluded that the State had shown by clear and convincing evidence that defendant was charged with the detainable offense of attempted first degree murder and that the proof was evident and the presumption great that defendant committed that offense. In so concluding, the circuit court addressed defense counsel's suggestion of self-defense and concluded that, based on the proffer, there was no support for self-defense. The victim was 61 years old and had not threatened defendant. Further, some of the gunshot wounds were to the back of the victim's legs showing that defendant continued to shoot while the victim was turned away from defendant.

¶ 21    The circuit court next concluded that defendant posed a real and present threat to the safety of others, including the victim. The circuit court reiterated that the acts of the defendant were "egregious" and someone capable of those acts is "clearly" a safety concern and poses a real and present threat to the safety of others. More specifically, the court stated,

> "This defendant not only illegally possessed a firearm but then pointed that firearm at a 61 year old who apparently was the building owner of the place where defendant had been living and shot him. Didn't shoot him once. Didn't shoot him twice. Didn't shoot him three times. Apparently there are multiple gunshots fired because he was shot six times."

The court further noted that based on the gunshot wounds on the back of the victim's legs, defendant continued to shoot the victim when his back was turned to defendant.

¶ 22    Lastly, the court found that there were no conditions or combination of conditions that could mitigate this risk. The court considered defendant's pretrial assessment score, mitigation

evidence, and lack of criminal history. In weighing those factors against the nature and circumstances of this particular offense-including the "level of violence" and defendant's illegal possession of the firearm, which was used in the crime, the court concluded that it would only consider the most restrictive condition of release, electronic monitoring. The court explained that electronic monitoring is "far from fail safe" and that there is "an entire court call *** dedicated to violations of electronic monitoring." The court emphasized that electronic monitoring would not prevent defendant from possessing firearms or from committing acts of violence.

¶ 23 The court granted the State's petition to detain defendant pretrial. The court entered a written order reflecting its findings. As to the finding that defendant posed a real and present threat to the safety of any person or persons, the order noted that defendant "fired a weapon at a 61 year old several times" and the victim suffered six gunshot wounds. After shooting the victim, defendant again pointed the gun at the victim, saying "looking what you made me do." As to the determinations that no condition or combination of conditions can mitigate the real and present threat posed by defendant to the safety of any person or persons or community based on the specific articulable facts of the case, the court noted that "[b]ased upon the nature and circumstances of this violent crime there is no condition or conditions of release this court could impose to prevent the defendant from possessing weapons and committing crimes."

¶ 24 Defendant timely appealed. A supporting record and report of proceedings have been filed with this court, and both defendant and the State have filed a memorandum.

¶ 25 Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2022)), as amended by the Act. Under the Code, the requirement of posting monetary bail has been abolished in Illinois as of September 18, 2023. See 725 ILCS 5/110-1.5 (West 2022); *Rowe*, 2023 IL 129248, ¶ 52. Now, "[a]ll persons charged with an offense shall be eligible for pretrial release before

conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022).

¶ 26    Pretrial release may only be denied in certain specific situations. 725 ILCS 5/110-6.1 (West 2022). Where—as is the case here—a defendant is charged with attempting to commit a forceable felony, and after filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 West 2022). "Clear and convincing evidence is "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12.

¶ 27    Appeals of bail orders under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023) have historically been reviewed using an abuse of discretion standard. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9). While Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) provides a new procedure for these types of appeals considering the changes made to the Code by the Act, "the Act neither mandates nor suggests a different standard of review." *Inman*, 2023 IL App (4th) 230864, ¶ 11. There is some debate among the appellate districts concerning the appropriate standard of review with respect to appeals under Rule 604(h). See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing

split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act). While we would affirm under either standard, we conclude that a circuit court's determination as to the first two propositions—whether a defendant committed a detainable offense and poses a threat—are reviewed under the manifest weight standard (*People v. Rodriquez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12). We review the trial court's determination that no condition or combination of conditions can mitigate the real and present threat posed by defendant for an abuse of discretion. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36 (explaining that the circuit court "must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat"); *People v. Reed*, 2023 IL (1st) 231834, ¶ 31 (explaining that the circuit court in coming to its determination is "called upon to weigh and balance a multitude of factors").

¶ 28   An abuse of discretion occurs where the court's judgment is fanciful, arbitrary, or unreasonable, or where no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. In conducting this review, we will not substitute the circuit court's factual and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 29   On appeal, defendant does not challenge the evidence that he has been charged with a detention-qualifying offense or that the proof is evident or the presumption great that he committed the offense. Defendant also does not challenge the circuit court's determination that the State met its burden of proving by clear and convincing evidence that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community. Rather, defendant

argues that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community and that the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor.

¶ 30    Section 110-5 of the Code outlines the factors trial courts should consider in determining conditions of pretrial release. 725 ILCS 5/110-5 (West 2022). These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant. *Id.* 110-5(a)(1)-(3) (West 2022).

¶ 31    Here, the State proffered that defendant was charged with attempted first degree murder after defendant, without sufficient provocation, shot the 61-year-old victim multiple times in the legs and groin. The shooting occurred in the building owned by the victim, where defendant resided. The victim was investigating a bedbug issue, when defendant reached under his pillow, grabbed a gun, and shot the victim. Some of the victim's gunshot wounds were on the back of his legs, showing that defendant continued to shoot the victim while the victim was turned away from defendant. The victim crawled from the apartment. Defendant followed him out to the corridor. And rather than offer assistance, defendant pointed the gun at the victim, then blamed the victim for the shooting by telling him "look what you made me do."

¶ 32    The State acknowledged that defendant did not have a criminal background. However, defendant did not have a FOID card or a CCL, which the State argued showed that defendant would not follow conditions of release as he did not follow conditions to legally possess a firearm.

The State further argued that electronic monitoring would not prevent defendant from, again, obtaining a gun illegally and committing another violent crime.

¶ 33    In making its determination, the circuit court specifically noted that it had considered the mitigation evidence including that defendant did not have prior arrests and defendant's PSA scores, age, education, employment, and military service. The court also considered the PSA recommendation that if defendant is released, he should be released with maximum conditions. In considering electronic monitoring, the circuit court explained that, after weighing the evidence and the shortcomings of electronic monitoring, it would not prevent defendant from possessing firearms or committing further acts of violence. See *People v Whitaker*, 2024 IL App (1st) 232009 (electronic home monitoring is not an infallible method of preventing harm to public safety).

¶ 34    The record reflects that the circuit court properly considered the statutory factors: the nature, seriousness, and circumstances of the offense charged. In light of these statutory factors and the State's proffered evidence, we cannot find that the circuit court's determination that the State proved by clear and convincing evidence that there were no conditions or combination of conditions of pretrial release that could mitigate the real and present threat posed by defendant, was arbitrary or unreasonable.

¶ 35    Defendant, citing *People v. Stock*, 2023 IL App (1st) 231753, argues that the State was required to, but failed to proffer more than just the nature of the offense charged to support a finding that no conditions could mitigate defendant's threat. In *Stock*, the defendant was charged with aggravated battery after he discharged a gun once inside his bedroom and the bullet went through the wall of the bathroom and grazed his estranged wife. *Id.* ¶¶ 4-5. The victim had been at the home with friends to retrieve belongings. *Id.* ¶ 5. According to the defense proffer, the defendant believed the victim had left the home when he fired the weapon and the victim drove

herself to the hospital for treatment after first going to a bar with friends. *Id*. ¶ 6. The State relied on its proffer as to the basic elements of the offense to support its argument that defendant should be detained. *Id.* ¶¶ 5, 17. The circuit court ordered the detention of the defendant without oral or written explanation as to its finding that there were no conditions which would mitigate the threat posed by defendant. *Id.* ¶ 8.

¶ 36    On appeal, this court found that the State failed to prove there were no conditions or combination of conditions that could mitigate the danger posed by defendant where the State offered no evidence to support that conclusion and failed to discuss any conditions. *Id.* ¶ 19. The *Stock* court reasoned that "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18.

¶ 37    We find *Stock* distinguishable. In this case, defendant intentionally fired a gun directly at the victim multiple times; the victim suffered six gunshot wounds. Here, the State proffered more than just the basic elements of the offense charged in support of its claim that no condition or combination of conditions could mitigate that threat. The State highlighted the crime's level of violence and that defendant obtained the gun illegally and, without sufficient provocation, shot the victim multiple times, including in the back of the legs. After the victim fled the apartment, defendant went to the victim and rather than aiding him, defendant pointed the gun at the victim and blamed the victim for the incident. The State also discussed possible conditions where it argued that electronic monitoring would not prevent defendant from, again, illegally obtaining a firearm and committing further acts of violence. The circuit court explained that only detainment would mitigate defendant's threat and that electronic monitoring would not address the threat.

¶ 38    Lastly, defendant contends that the circuit court erred in ordering him detained where the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure defendant's appearance at later hearings. However, the State's petition did not rely upon this alternative statutory risk factor, the State made no argument as to this factor at the hearing, and the circuit court's written order did not rely upon a finding as to this risk to justify defendant's detention. Even if the trial court had relied on the risk of defendant's willful flight from prosecution, we need not address this issue further where the decision to detain defendant may be affirmed solely based on the risk to a person or persons or the community, as discussed above. 725 ILCS 5/110-6.1(e)(3) (West 2022) (the State must prove that "no condition or combination of conditions *** can mitigate (i) the real and present threat to the safety of any person or persons or the community ***, *or* (ii) the defendant's willful flight" (emphasis added)).

¶ 39    In summary, we find that the circuit court did not abuse its discretion when it found that the State proved by clear and convincing evidence that there are no conditions or combination of conditions which would mitigate the threat to the safety of the victim and the community. The circuit court did not abuse its discretion in ordering the pretrial detention of defendant.

¶ 40    For the foregoing reasons, we affirm the order of the circuit court detaining defendant and remanding him to the custody of the Cook County sheriff pending trial.

¶ 41    Affirmed.